[Civ. No. 18897. Second Dist., Div. One. July 21, 1952.]

PAUL LOPEZ, a Minor, etc., Respondent, v. JOSEPH SURCHIA, Appellant.

Nicholas Ferrara for Appellant.

David C. Marcus for Respondent.

WHITE, P. J.—Plaintiff, a minor, brought an action through his guardian *ad litem* to recover damages for personal injuries resulting from an assault by the defendant. The defense to the action was that the assault was committed by defendant in defense of himself, his son, and his home. The trial court, hearing the cause without a jury, gave judgment for the plaintiff for $2,500 damages, from which judgment defendant appeals.

The plaintiff testified that at the time of the incident he was 18 years of age; that he, Robert Ramus and Joe Garcia were looking for Ramus' "girl friend" and parked their automobile in front of the premises of defendant where the assault took place. Plaintiff and Garcia proceeded up the street about three-quarters of a block from where the car was parked, Ramus remaining in the car. Returning to the car, they observed Ramus fighting with another man on the front lawn of the defendant's property; that the defendant came out of his house with a gun in his hand and fired two shots, one of them striking the plaintiff. The plain-

tiff testified that he took no part in the fight and at no time entered on the defendant's property. The testimony of Joe Garcia, called as a witness on behalf of plaintiff, was substantially the same as that of the plaintiff. On examination by the court he stated that the plaintiff was 5 or 6 feet from the two boys who were fighting.

The defendant, Joseph Surchia, testified that he, his wife and his son were in the kitchen when there was a knock at the door. He went to the door and saw a young man (Ramus) who said he was looking for "Jessie," and defendant told him he had the wrong place; that Ramus said, "No, they tell me she is here, I am coming in if I have to come in by force"; that Ramus then forced his way into the front room of the house, breaking the screen door hook. That upon Ramus' refusal to leave, defendant's son tried to eject Ramus by force, and the two of them fought in the front room, out the front door and into the front yard; that plaintiff and Garcia took sides with Ramus in the fight; that all of them were beating his son; that he yelled at them to stop but they would not do so; that defendant had a broken arm and could not defend himself; "I went and got my gun and I went out there and I was yelling and I said, 'Leave my boy alone,' I had the gun. I just intended to scare those boys and I don't know how it happened, but the first thing I saw the gun went off and I heard the scream and they all ran." He further testified that the plaintiff was "pounding my boy from the back." The defendant introduced in evidence a written report which he made to the police department, in which he stated in part: "I shot to protect my son, who was fighting with a Mexican boy. Then another came running up just as I shot and I guess I hit him. I only fired one shot. . . ."

The defendant's testimony was corroborated by that of his wife and his son.

The trial court found that the defendant committed an assault upon the plaintiff; that plaintiff did not assault defendant or his son or attempt to break into defendant's dwelling; that the assault was not committed in defense of defendant, his son, or the peaceable possession of his dwelling; and that "the use of the gun by defendant was unlawful and excessive under the circumstances, and without due regard or care for others."

Appellant urges that there was no proof of an assault, for the reason that there was no proof of intent to commit

any injury to the person of plaintiff; that the gun was not aimed at plaintiff or anyone else and the shooting was accidental. Further, appellant contends that "even if there was proof of an assault and battery, it was privileged, because defendant acted in lawful self-defense," the circumstances justifying the defendant in using the force he actually exercised in the defense of his family and his home. Further, it is argued, the evidence does not disclose any wilful act on the part of defendant, but at most negligence. Finally, that the findings are inconsistent and contradictory, it is urged, because the court in effect found that plaintiff was an innocent bystander, and that defendant used excessive force; that a finding that he used excessive force "would imply that defendant was entitled to use some force" and consequently contradicts the finding that defendant did not act in self-defense.

None of the contentions on appeal may be sustained. Defendant's version of the occurrence was contradicted by the testimony of the plaintiff and his companion. Defendant's testimony that the gun went off accidentally, as well as his testimony that several boys were attacking his son, was impeached by his own statement to the police. The conflicting accounts of the circumstances surrounding the shooting presented questions of fact for determination by the court below. The findings of the trial court are supported by substantial evidence, and hence may not be disturbed on appeal.

In denying defendant's motion for a new trial, the trial judge filed a memorandum opinion which completely answers the contentions made by appellant herein, and from which we quote as follows:

"All of the authorities relied upon by the defendant in support of his motion involve situations where the defendant was acting *lawfully,* and unintentionally struck an innocent bystander. In the case at bar, the court found that the defendant, in shooting the gun, was acting *unlawfully* in that the evidence did not warrant a finding that the defendant had cause to believe that his son was in imminent danger of death or great bodily harm. In the court's judgment, the shooting was the use of excessive force under the circumstances. There was no evidence of the boy who fought with defendant's son being armed in any way; rather, it appeared to be nothing more than the not unusual fist fight between men or boys. It is true that defendant and his wife and

son testified to there being three or four boys attacking his son. This evidence was not believed by the court. The police report received in evidence by stipulation contains a statement by the defendant: 'my son who was fighting with a Mexican boy.' This confirms the testimony of plaintiff and his witness that but one boy went to defendant's door to inquire and but one boy fought with defendant's son.

"In order to establish a case of civil assault and battery, all that is necessary is that the evidence show that plaintiff's injury was caused by defendant's violence, or that defendant acted with wanton, willful or reckless disregard of plaintiff's rights. (6 C.J.S. Assault and Battery, par. 38 et seq.) The general rule is that every person is presumed to intend the natural and probable consequences of his acts. The true rule is that intent is the gist of the action only where the battery was committed in the performance of an act not otherwise unlawful. . . . If the cause of action is an alleged battery committed in the performance of an unlawful or wrongful act, the intent of the wrongdoer to injure is immaterial. In other words, if the defendant did an illegal act which was likely to prove injurious to another, he is answerable for the consequence which directly and naturally resulted from the conduct, even though he did not intend to do the particular injury which followed. (6 C.J.S. Assault and Battery, par. 10.) If defendant unlawfully aims at one person and hits another he is guilty of assault and battery on the party he hit, the injury being the direct, natural and probable consequence of the wrongful act. (6 C.J.S. Assault and Battery, par. 10, subd. 2.) Since the court found, in the case at bar, that the defendant was acting unlawfully and not in justifiable self-defense, the intent to commit the injury is presumed.

"It is interesting to note that even if intent must be proved, the same text quoted states:

" 'Where defendant is guilty of gross or culpable negligence, this may supply the element of intent, so as to create a liability for an unintentional injury which is the natural proximate consequence of defendant's conduct.' (6 C.J.S. Assault and Battery, par 10, subd. 3.)

"The burden was upon the defendant in this case to prove he was acting in lawful self-defense of his son. The court concluded that the force used was more than would appear reasonably necessary judged by the situation as it

reasonably appeared to the defendant at the time of the assault.''

The judgment is affirmed.

Doran, J., and Drapeau, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 18, 1952.