[Civ. No. 21589. Second Dist., Div. Two. Sept. 25, 1956.]

DENISE SINGER, a Minor, etc., et al., Appellants, v. ZEPPO MARX et al., Respondents.

Toxey H. Smith and Robert G. Beverly for Appellants.

Schell, Delamer & Loring and Betts, Ely & Loomis for Respondents.

ASHBURN, J.—Plaintiff Denise Singer, a minor, sues Tim Marx, another minor, for personal injury alleged to have been

inflicted upon her (1) through his negligence, and (2) through a battery of her person. She seeks recovery from Tim's parents, Zeppo Marx and Marion Marx, on the theory of their negligent failure to control Tim's known penchant for throwing rocks at other people. Denise's father also sues the parents of Tim for recovery of expenses incurred by him as a result of his child's injury, the charge being negligence upon the part of the parents. The trial judge granted a nonsuit as to both plaintiffs and all causes of action. Plaintiffs appeal.

"Under well-established rules we must, in considering whether the judgment of nonsuit was proper, resolve every conflict in their testimonies in favor of plaintiff, consider every inference which can reasonably be drawn and every presumption which can fairly be deemed to arise in support of plaintiff, and accept as true all evidence adduced, direct and indirect, which tends to sustain plaintiff's case." (*Lashley* v. *Koerber*, 26 Cal.2d 83, 84 [156 P.2d 441].) (To same effect see *Raber* v. *Tumin*, 36 Cal.2d 654, 656 [226 P.2d 574] ; *Blumberg* v. *M. & T. Incorporated*, 34 Cal.2d 226, 229 [209 P.2d 1].) In the following discussion the court assumes as established all evidence and all inferences favorable to plaintiffs' causes of action.

On September 13, 1953, Tim Marx was 9 years of age. Plaintiff Denise was 8 and Barbara Corcoran was also 8. They are the only eyewitnesses to the episode under examination. Tim and Denise were on the front lawn of the Singer residence, which was located on the north side of the street fronting south. Barbara was riding a bicycle back and forth on the pavement. At the time the injury was inflicted upon her Denise was some 6, 8 or 10 feet north of the sidewalk and Tim was to her left and rear about 4 feet away. The children were not playing any game. Tim had been throwing rocks into or across the street and talking about how far he could throw. Neither girl threw any rocks or clods. Immediately preceding Tim's striking Denise in the eye with a rock, which he admitted, Barbara was riding easterly on the sidewalk and entering upon the Singer property at the west side, about 30 feet from Denise. Tim, who was looking at plaintiff, said to her, "watch Barbie." He had not previously thrown at her or Barbara. Denise looked toward Barbara and then back at Tim and at the same moment was struck in the eye by the rock, which was a flat, rough one about the size of a small hen's egg. Barbara saw him throw at an angle toward her; saw him let go of the rock but did

not see it strike plaintiff. Denise heard him say "watch Barbie" and saw him raise his arm in the throw but did not see the rock leave his hand. She was struck immediately in the left eye. The line of throw toward Barbara would pass several feet in front of Denise. For the rock to strike her, one of two things would have to occur, either (1) Tim changed the direction of throw without any warning, or (2) he held the rock too loosely, or let go of it too soon to control its flight and inadvertently hit Denise. The evidence is susceptible of either of these inferences.

The general proposition that an infant is liable for his torts is established in this state by statute. Civil Code, section 41, says: "A minor . . . is civilly liable for a wrong done by him, but is not liable in exemplary damages unless at the time of the act he was capable of knowing that it was wrongful." That statute, it will be noted, does not imply as an element of liability for compensatory damages the existence of capacity to appreciate the wrongful character of the act. But the cases have engrafted upon it certain reasonable qualifications about to be discussed.

An infant who forcibly invades the person of another is liable for a battery regardless of an intent to inflict injury; the only intent which is necessary is that of doing the particular act in question—in this case throwing a rock at somebody. This matter is discussed in *Ellis* v. *D'Angelo*, 116 Cal.App.2d 310 [253 P.2d 675], in which it was held that, although a 4-year-old child is, as a matter of law, incapable of negligence (p. 316), the complaint nevertheless stated a cause of action for battery against the same child.

At page 315 it is said: "From these authorities and the cases which they cite it may be concluded generally that an infant is liable for his torts even though he lacks the mental development and capacity to recognize the wrongfulness of his conduct and so long as he has the mental capacity to have the state of mind necessary to the commission of the particular tort with which he is charged. Thus as between a battery and negligent injury an infant may have the capacity to intend the violent contact which is essential to the commission of battery when the same infant would be incapable of realizing that his heedless conduct might foreseeably lead to injury to another which is the essential capacity of mind to create liability for negligence." At page 317: "When it comes to the count charging battery a very different question is presented. We certainly cannot say that a 4-year-old

child is incapable of intending the violent or the harmful striking of another. Whether a 4-year-old child had such intent presents a fact question; and in view of section 41 of the Civil Code which makes the recognition of the wrongful character of the tort immaterial so far as the liability for compensatory damages is concerned, we must hold that the count charging battery states a cause of action.''

██ Certainly it cannot be said as a matter of law that Tim did not have sufficient mental capacity to intend the harmful striking of another. If he indicated to both girls that he was throwing at Barbara and then aimed at Denise, whom he hit, he was plainly liable to her for a battery.

This matter of intent in a battery case is also discussed in *Lopez* v. *Surchia*, 112 Cal.App.2d 314 [246 P.2d 111], which involved an adult defendant who had shot plaintiff and claimed self-defense. At page 318: '' 'The true rule is that intent is the gist of the action only where the battery was committed in the performance of an act not otherwise unlawful. . . . If the cause of action is an alleged battery committed in the performance of an unlawful or wrongful act, the intent of the wrongdoer to injure is immaterial. In other words, if the defendant did an illegal act which was likely to prove injurious to another, he is answerable for the consequence which directly and naturally resulted from the conduct, even though he did not intend to do the particular injury which followed. (6 C.J.S. Assault and Battery, par. 10.)' ''

██ While throwing rocks at trees or into the street ordinarily is an innocent and lawful pastime, that same act when directed at another person is wrongful. The evidence at bar (combining that of Barbara with portions of Tim's own testimony) warrants an inference that Tim threw at Barbara and inadvertently struck Denise. In such circumstances the doctrine of "transferred intent" renders him liable to Denise. On this subject the Lopez case, *supra*, says at page 318: '' 'If defendant unlawfully aims at one person and hits another he is guilty of assault and battery on the party he hit, the injury being the direct, natural and probable consequence of the wrongful act. (6 C.J.S. Assault and Battery, par. 10, subd. 2.)' '' (See also Prosser on Torts, 2d ed., p. 33.) The rule is not confined to criminal cases, as argued by respondents.

██ The negligence of a minor is to be determined upon the basis of whether he used that degree of care ordinarily exercised by children of like age, mental capacity and ex-

perience; and that question is usually one of fact for the jury (19 Cal.Jur. § 41, p. 605). In *Smith* v. *Harger*, 84 Cal.App.2d 361, 369-370 [191 P.2d 25], the question was held to be one of fact in the case of a 5-year-old boy.

Tim was 9 years old and there is nothing in the record to warrant a holding as matter of law that he could not be guilty of negligence. That was for the jury to decide. ■ And the question whether he did use the care required of a boy of 9 was also one of fact. If, as he testified, the rock slipped out of his hand prematurely, that presents a question of what care was required of a 9-year-old rock thrower who was throwing in the presence of other children and recognized at the time that that is a dangerous practice and so testified.

Incidents occurring in the playing of organized games do not present controlling analogies. These children were not playing a game; the girls were not throwing rocks; Tim alone was performing and he was not under the pressure of a contest. Therefore, cases such as *Hoyt* v. *Rosenberg*, 80 Cal. App.2d 500 [182 P.2d 234, 173 A.L.R. 883], are inapplicable. Nor do we have upon this appeal any question of assumption of risk, as was the case in *Quinn* v. *Recreation Park Assn.*, 3 Cal.2d 725 [46 P.2d 144].

■ We hold that the evidence at bar would sustain an inference that Tim (1) deliberately threw the rock at plaintiff, or (2) threw the rock at Barbara and accidentally struck plaintiff, or (3) negligently held and threw the rock in such manner as to cause the throw to miscarry and thus strike plaintiff. Pursuing this line of thought counsel for respondent Tim argue that: "When one equally reasonable inference supports a plaintiff's *prima facie* case against an equally reasonable inference supporting the defendant, the plaintiff has not sustained his burden of proof." In support thereof these cases are cited: *Estate of Moore*, 65 Cal.App. 29 at 33 [223 P. 73]; *Sheldon* v. *James*, 175 Cal. 474 [166 P. 8, 2 A.L.R. 1493]; *Chapman* v. *Title Ins. & Trust Co.*, 68 Cal. App.2d 745 [158 P.2d 42]; *Hopkins* v. *Heller*, 59 Cal.App. 447 at 454 [210 P. 975]. While they do hold that evidence which is equally susceptible of opposing inferences, one favorable and one unfavorable to the plaintiff, constitutes no proof at all, we are cognizant of no authority to the effect that that is true of evidence susceptible of several inferences all of which point in the same direction, liability of defendant.

■ On principle it seems that whenever the evidence affords room for several inferences favorable to the plaintiff the

jury should determine the one to draw, and the plaintiff does not have to elect or to establish one inescapable inference. *Sanders* v. *MacFarlane's Candies,* 119 Cal.App.2d 497, 500 [259 P.2d 1010], is apposite. It holds that an inference "must be based on probabilities," "that in civil cases the rule of decision is a rule of probability only"; and further says: " 'It is not necessary, in order to establish a theory by circumstantial evidence, that the facts be such and so related to each other than such theory is the *only* conclusion that can fairly or reasonably be drawn therefrom. . . .' (*Katenkamp* v. *Union Realty Co.,* 36 Cal.App.2d 602, 617 [98 P.2d 239].) The plaintiff relying on circumstantial evidence does not have to exclude the possibility of every other reasonable inference possibly derivable from the facts proved. (*Vaccarezza* v. *Sanguinetti,* 71 Cal.App.2d 687, 692 [163 P.2d 470]; *Spolter* v. *Four-Wheel Brake Serv. Co., supra,* at p. 694 [99 Cal.App.2d 690 [222 P.2d 307].)" (See also *Juchert* v. *California Water Service Co.,* 16 Cal.2d 500, 506-508 [106 P.2d 886]; 18 Cal.Jur.2d § 64, p. 487.)

 The granting of a nonsuit in favor of Tim was erroneous.

The propriety of the like ruling in favor of the parents turns upon whether there was substantial proof of negligence on their part in failing to perform the duty of exercising reasonable control over a child known to possess and exercise dangerous proclivities toward other people. Prosser on Torts, 2d edition, page 681, states the matter thus: "But beyond this, the parent has a special power of control over the conduct of the child, which he is under a duty to exercise reasonably for the protection of others. He may thus be liable for a failure to take the gun away from the child when he finds him with it, or to make reasonable efforts to restrain and correct him when he manifests a tendency to beat other children with a stick, or to shoot at horses in the street. Probably, however, the effect of the decided cases is that there is no liability upon the parent unless he has had an opportunity to correct specific propensity on the part of the child, and that it is too much to hold the parent responsible for general incorrigibility and a bad disposition. He may, however, be under a duty to warn others who may suffer from such characteristics." *Martin* v. *Barrett,* 120 Cal.App.2d 625, 628 [261 P.2d 551], considering the sufficiency of a complaint, says: "The gravamen of the complaint in cases upholding liability is the knowledge of the boy's previous conduct, dis-

position to do the act charged, and the failure of the parents to warn the plaintiff of this propensity. (See cases collected in *Ellis* v. *D'Angelo, supra,* p. 318.)'' *Ellis* v. *D'Angelo, supra,* 116 Cal.App.2d 310, at page 317: ''While it is the rule in California, as it is generally at the common law, that there is no vicarious liability on a parent for the torts of a child there is 'another rule of the law relating to the torts of minors, which is somewhat in the nature of an exception, and that is that a parent may become liable for an injury caused by the child where the parent's negligence made it possible for the child to cause the injury complained of, and probable that it would do so.' ''

 The evidence at bar shows that Tim began throwing rocks at people in the spring of 1952; the injury to Denise occurred on September 13, 1953. Mrs. James, a neighbor, testified that she could almost say that she never saw Tim or his younger brother when they were not throwing rocks; that when she reprimanded Tim on one occasion for doing so and turned her back to go into the house he gave her ''a couple of hits on the back''; that the Marx boys threw rocks at her mother-in-law every time they came around, and ''[f]inally, when we did order them off the property every time they would go by on a bicycle or something they had something to throw at the house. They ruined my front door throwing darts.'' Mrs. James informed the mother of Tim's throwing rocks and told her ''[t]hat I couldn't tolerate the children throwing rocks and clods at me, at my house, and darts also, and which my mother-in-law, in fact, I couldn't stand them throwing anything.'' But the rock throwing continued. Mrs. Marx, examined under section 2055, Code of Civil Procedure, denied knowing Mrs. James or receiving any such notice from her. Hence there is no evidence of what efforts, if any, the parents then made to control Tim's future conduct. It is inferable, however, that any corrective measures which might have been taken were ineffective because the course of conduct continued.

Mrs. Marx did admit that Mrs. Pogson, Tim's school principal, had told her that Tim threw clods at her car and, anent the subject of punishment, said: ''I always used to talk it over with Mr. Marx''; ''He was either, as I repeat, he was either made to write that 'I will not throw pebbles' or 'I won't do this' or 'I will stand in line in school as my teacher wants me to,' 'I will try to do better arithmetic' ''; ''I do believe I remember, I remember, I think, both those punish-

ments absolutely, sitting in his room, being punished sitting in a chair, and also writing, your Honor, writing words.''

Mrs. James apparently moved from the neighborhood in September, 1952, and counsel for respondent parents argue that her testimony was necessarily limited to a period which ended a year before the injury to Denise; that that is too remote to have evidential value upon Tim's habits and propensities on September 13, 1953. With or without punishment Tim's throwing had continued unabated as long as September, 1952, and the presumption is that these proclivities continued until September, 1953, when rock throwing is known to have occurred again. The presumption of continuity flows from section 1963, subdivision 32, Code of Civil Procedure.

■ Traits of character and habits of conduct are in their nature continuous and hence within the presumption. (31 C.J.S. § 124, p. 739; *Pacific Mut. Life Ins. Co.* v. *Meade,* 281 Ky. 36 [134 S.W.2d 960, 964]; *Kennison* v. *Chokie,* 55 Wyo. 421 [100 P.2d 97, 98]; *Grikietis* v. *Grikietis,* 319 Ill.App. 216 [48 N.E.2d 775, 776]; *McGraw* v. *McGraw,* 171 Mass. 146 [50 N.E. 526].) The punishment imposed in the case of the Pogson incident appears to have been ineffective. The record does not show just when that occurred, except that it preceded the Denise incident.

■ It is fairly inferable that Mrs. Marx had notice of Tim's dangerous proclivities and did not administer effective discipline. It was for the jury to say whether that was negligence on her part. To draw an inference they would have to find only a probability as its basis, and it cannot be said that in law there was no such probability of failure of Mrs. Marx to exercise reasonable care in the control of her child's dangerous propensities.

■ So far as the father, Zeppo Marx, is concerned, it does not appear that he had any personal knowledge of the rock throwing. The only evidence as to him is that he was consulted when punishment for any dereliction was due. That is not enough to make a prima facie case against him. (See *Martin* v. *Barrett, supra,* 120 Cal.App.2d 625, at 628.)

The judgment of nonsuit is reversed as to defendants Tim Marx and Marion Marx, and affirmed as to defendant Zeppo Marx.

Moore, P. J., and Fox, J., concurred.

The petition of respondents Marion Marx and Tim Marx for a hearing by the Supreme Court was denied November 21, 1956.