**In re Kristin Marie BOTHWELL, Debtor.**

**Gene F. LIEKWEG, Plaintiff,**

v.

**Kristin Marie BOTHWELL, Defendant.**

**Bankruptcy No. 80–03118.**

**Adv. No. 80–0226.**

United States Bankruptcy Court, N.D. Iowa.

Aug. 26, 1983.

James E. Coonley II, Hampton, Iowa, for plaintiff.

David M. Nelsen, Mason City, for defendant.

WILLIAM W. THINNES, Bankruptcy Judge.

The matter before the Court is a Complaint filed by Gene F. Liekweg, Plaintiff, against Kristin Marie Bothwell, Debtor, seeking a determination that a debt owed by Debtor be determined nondischargeable pursuant to 11 U.S.C. § 523(a)(6). Upon proper notice, a hearing [1] was held at which Attorney David M. Nelsen represented the Debtor and Attorney Michael J. Cross represented the Plaintiff. The Court, being fully advised and pursuant to B.R. 752, now makes the following Findings of Fact, Conclusions of Law and Order.

The Plaintiff, Gene Liekweg, 26 years old at time of Trial, has been a farmer since 1977. Through a mutual friend, he was introduced to the Debtor in January, 1978. The Plaintiff and the Debtor dated each other from that time through July, 1978, when the Plaintiff indicated that he desired to terminate the relationship. The termination, however, appeared to be unilateral, as the Debtor continued to visit the Plaintiff.

During the Fall of 1978, the Debtor became concerned that she might be preg-

---

1. Pursuant to a pre-trial order, the only issue to be resolved at the hearing was whether the debt was dischargeable. The hearing did not concern the issue of damages. The ruling by this Court herein therefore is focused only on the dischargeability of the debt.

nant. Her attempts to have the Plaintiff accompany her to undergo pregnancy tests were unsuccessful. The Debtor, in yet another attempt to urge Plaintiff to accept responsibility for the relationship between the parties, drove out to the Plaintiff's farm shortly after midnight on February 10, 1979. Upon meeting the Plaintiff in his truck, the Debtor proceeded to question Plaintiff as to his whereabouts earlier that evening. After exchanging a few words, the Plaintiff directed the Debtor to leave. At that time, the Debtor threw her key-chains at the Plaintiff through the truck's half-opened window, striking his right eye. After several surgeries, it was determined that Plaintiff has permanently lost sight in his right eye.

A suit was commenced in Iowa District Court for Franklin County by the Plaintiff seeking $1,500,000.00 damages against the Debtor. Shortly after the commencement of that suit, the Debtor filed a Chapter 7 petition in this Court. During the pendency of the Debtor's bankruptcy proceeding, the Plaintiff filed this adversary proceeding to determine the dischargeability of the Debtor's debt toward the Plaintiff arising under the lawsuit filed in Iowa district court.

The governing statutory provision is 11 U.S.C. § 523(a)(6):

> (a) A discharge under § 727 ... of this title does not discharge an individual debtor from any debt—
>
> \* \* \* \* \* \*
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity...

Construing 11 U.S.C. § 523(a)(6), this Court recently held in In re Simpson, 29 B.R. 202, 212 (Bkrtcy.N.D.Iowa 1983):

> To be willful and malicious, an act must be wrongful, done intentionally, necessarily produce harm, and without just cause or excuse.

Thus, hatred, spite, ill-will or reckless disregard are not necessary for a § 523(a)(6)

finding. In re Simpson, 29 B.R. 212; see also In re Dashner, Bkcy No. 81–04216, Adv. No. 81–0509, slip op. at 14 (Bankr.N.D. Iowa 1983) ("intentional disregard," not reckless disregard, is the correct standard). However, consistent with the congressional policy of giving debtors a fresh start, statutory provisions concerning exceptions to discharge are construed strictly against creditors and liberally in favor of debtors. In re Simpson, 29 B.R. at 210. Thus, a creditor claiming an exception to discharge bears the burden of proving its claim by "clear and convincing evidence." In re Dashner, slip op. at 10.

Applying the above factors to the case at bar, this Court concludes that, for the purpose of 11 U.S.C. § 523(a)(6), the Debtor has willfully and maliciously injured the Plaintiff. First, the act of throwing keys at another person was "wrongful." Cf. Singer v. Marx, 144 Cal.App.2d 637, 301 P.2d 440, 443 (1956) ("while throwing rocks at trees or into the street ordinarily is an innocent and lawful pastime, the same act when directed at another person is wrongful.")

Second, this Court finds that the Debtor intentionally threw the keys at the Plaintiff. Cf. In re Greenwell, 21 B.R. 419, 421 (D.C.S.D.Ohio 1982) (voluntary drinking constituted intentional act). While the Debtor testified that she did not intend to injure Plaintiff's eye, such lack of intent is not an essential element in a common-law battery action. W. Prosser, Law of Torts § 9 (4th ed. 1971) (intent to injure is not required for a plaintiff to recover on an assault and battery theory); Restatement 2d of Torts § 16 (1965)[2]; id § 435; accord Lambertson v. United States, 528 F.2d 441, 444 (2d Cir.1976) (intent to make contact, not to do injury, is essential element of assault and battery) (Applying New York law); Whitley v. Andersen, 37 Colo.App. 486, 551 P.2d 1083 (1976) (an intent to cause physical injury is not a prerequisite for liability on battery); cf. 6 Am.Jur.2d Assault & Battery § 117 (1963) ("the fact that an act was done with good intentions does

---

**2.** The Restatement contains the following illustration:

A is playing golf. B, his caddie, is inattentive and A becomes angry. Intending to

not excuse the actor from civil liability for damage resulting therefrom"); 6A C.J.S. *Assault & Battery* § 7, at 325 (1975) ("absence of injury affects the measure of damages rather than the right of action"). *See generally Rankin v. Farmers Elevator Mutual Insurance Co.,* 393 F.2d 718, 720 (10th Cir.1968) ("Where an intentional act results in injuries which are the natural and probable consequences of the act, the injuries as well as the act are intentional."). By throwing her keys through a half-opened window at another person located a short distance away, Debtor manifested "an act [that was] . . . done intentionally."

Third, the act of throwing keys at another person is one that "necessarily produce[s] harm." The Debtor should have known that metal objects such as keys when struck against the human body would be harmful. Indeed, the loss of sight could hardly not be harmful. As stated by the court in *In re Cooney,* 18 B.R. 1011, 1014 (Bkrtcy.W.D.Ky. 1982), a case involving injuries inflicted by a debtor while intoxicated:

> His actions toward her . . . hardly flowed from a compassionate tranquility, nor was it the milk of human kindness that filled him. The incident may have begun as one of those points of inebriant social friction to which the defendant, according to his own testimony, was occasionally a party. But the difference between violent mischief and actual hatred, when reflected upon from a hospital bed for nineteen days, is not much of a difference.

Last, there is no showing that the Debtor acted with "just cause or excuse." It might well have been annoying to the Debtor that Plaintiff repeatedly refused to accompany her to undergo pregnancy tests. Indeed, Debtor testified that she was at the point of being "frustrated." Such annoyance and frustration does not, however, rise to the

level of justification. *See* 6 Am.Jur.2d *Assault & Battery* § 151 (1963) ("mere words or acts that do not amount to an assault . . . are no defense to civil action on the ground of assault").

In sum, this Court concludes that Plaintiff has satisfied his burden to prove a willful and malicious injury within the meaning of 11 U.S.C. § 523(a)(6). The Plaintiff's Complaint seeking a determination that the debt be held nondischargeable is therefore sustained. The debt owed by the Debtor to the Plaintiff is not included in the effect of the discharge previously entered; and

IT IS SO ORDERED.

frighten but not to harm B, A aims a blow at him with a golf club which he stops some eight inches from B's head. Owing to the negligence of the club maker from whom A has just bought the club, the rivet which should have secured the head is defective, though A could not have discovered the defect without removing the head. The head of the club flies off and strikes B in the eye, putting it out. A is subject to liability to B for the loss of his eye.

*Restatement (2d) of Torts* § 16 comment a, illustration 2 (1965). While the *Restatement* illustration differs factually from the case at bar, the legal principles are analogous.