OPINION OF THE COURT
Bruce Allen, J.
The issue raised in this nonjury trial was as follows: should a parent (here, the father) be held criminally liable for allowing his spouse, a drug addict, to live with and have access to *907 their infant daughter during a period of time when the child is being abused? Based on the following analysis, I conclude that the father has committed the offense of endangering the welfare of a child (Penal Law § 260.10 [2]) under these circumstances.
The statute provides, in pertinent part, that a parent of a minor is guilty if he "fails * * * to exercise reasonable diligence in the control of [his] child to prevent [her] from becoming an 'abused child’ * * * as [that term is] defined * * * in * * * the family court act.” (Penal Law § 260.10 [2].) The prosecutor’s theory was that the defendant, Patrick Scully, ran afoul of this provision by permitting a dangerous situation at home to persist until his three-month-old daughter, Deirdre Scully, eventually became an abused child.
It was not disputed at the trial that the defendant was the father of Deirdre, that he and his wife lived with her, and that they were responsible for taking care of her. Nor was there any question that Deirdre had been abused during the course of that two- to three-month period of time. Dr. Deborah Bostic, who treated Deirdre when she was finally taken to the emergency room, testified at length as to the child’s numerous injuries. Dr. Bostic added that one of the injuries — a broken rib — created an almost irrebuttable presumption of child abuse.
Yet there was no proof as to how Deirdre’s injuries had occurred. The doctor admitted further that a lay person (like the defendant) might not have noticed Deirdre’s multiple fractures, some of which were already healing. On the other hand, the defendant knew full well that Deirdre was in constant danger at home: twice he went so far as to take her to a neighbor, Mary Kalbanico, for safekeeping. In each instance the defendant’s wife was under the influence of alcohol or drugs or both. During one of those occasions Deirdre was covered in blood (although not bleeding) and the wife was yelling and screaming.
It may be fairly inferred from the record, therefore, that the defendant removed Deirdre from the home, albeit briefly, because he feared that his wife, in her narcotic frenzy, might injure the child. Ms. Kalbanico shared the defendant’s concerns, and she spoke to the defendant’s wife about Deirdre’s well-being. In that conversation the wife admitted her addiction to drugs and alcohol but promised to care properly for Deirdre.
*908 What was the defendant to do in this precarious situation? Although perhaps difficult to execute, the necessary course of conduct for him to follow was self-evident: he should have kept Deirdre away from his wife on a permanent basis until such time that his wife was no longer a menace to the child. Section 260.10 (2) required no less of a response on the defendant’s part.
Nor could the defendant contend that this statute violates the void for vagueness doctrine of the Due Process Clause of the 14th Amendment. As stated in People v Bergerson (17 NY2d 398, 403 [1966]), " '[t]he test is whether a reasonable man subject to the statute would be informed of the nature of the offense prohibited and what is required of him.’ ” Section 260.10 (2) clearly informed the defendant that he must not allow his children to become abused; what was required of him was the taking of any reasonable action necessary to prevent that danger from happening.
There is also nothing untoward about the strict liability aspect of this statute. By holding a parent accountable for any resulting child abuse, regardless of the source of the mistreatment, the Legislature was expressing the widely held view that our children come first and are entitled to special consideration. Fortunately, most parents automatically place the interests of their children above their own, and make every effort to protect them from being abused. The statute is aimed at the few parents who do not live up to their responsibilities.
Far from charting a new direction, the statute has roots going back more than 100 years. In 1876 and again in 1910 the Legislature enacted laws which are strikingly similar to section 260.10 (compare, L 1876, ch 122, § 4, with Penal Law of 1909 § 494 [as added by L 1910, ch 699]). Indeed, the 1909 revision, just like the present statute, contained a strict liability standard keyed to the parent’s failure to exercise reasonable diligence in controlling the child.
And even under the 1876 statute, which required that the parent or guardian "willfully” cause the child’s injury, the courts did not hesitate to read that language broadly. For example, in Cowley v People (83 NY 464 [1881]), the Court of Appeals upheld the conviction of an orphanage owner who had failed to provide enough nourishment for one of his charges. The orphanage owner, like the defendant in this case, was guilty of nonfeasance rather than malfeasance.
Not surprisingly, the Family Court Act also recognizes that *909 one parent may be charged with child abuse even though the other parent actually committed the acts. (Family Ct Act § 1012 [e] [ii]; see, Matter of Alyne E., 113 Misc 2d 307, 312 [Fam Ct, Richmond County 1982].)
I do not doubt that the defendant had a painful decision to make. But when he deferred or delayed in making the decision — using stopgap measures instead — he allowed his daughter’s very life to be in peril. The Legislature, in its wisdom, has concluded that a parent must take affirmative steps to protect a child in such a situation. As a consequence, everyone will benefit from a reduced incidence of child abuse. In this complicated day and age, our children have a hard time growing up as it is; any statute designed to improve their chance to become healthy adults must be implemented fully.
This decision amplifies my verdict of guilty following a bench trial which commenced on October 1, 1986. So ordered.