[No. S024925. July 1, 1993.]

GARY WILLIAMS et al., Plaintiffs and Appellants, v.
GILBERT GARCETTI, as District Attorney, etc., et al., Defendants and
Respondents.

## COUNSEL

Carol A. Sobel, Paul L. Hoffman and Mark D. Rosenbaum for Plaintiffs and Appellants.

James K. Hahn, City Attorney, Maureen Siegel, Assistant City Attorney, Debbie Lew and R. Bruce Coplen, Deputy City Attorneys, Ira Reiner and Gilbert I. Garcetti, District Attorneys, Thomas P. Higgins, Deputy District Attorney, Chase, Rotchford, Drukker & Bogust, Ronald A. Dwyer, John A. Daly and David F. Link for Defendants and Respondents.

## OPINION

**MOSK, J.**—Penal Code section 272 (hereafter section 272) provides that every person who commits any act or omits any duty causing, encouraging, or contributing to the dependency or delinquency of a minor is guilty of a misdemeanor. A 1988 amendment thereto (hereafter the amendment) provides that for the purposes of this section, parents or guardians "shall have the duty to exercise reasonable care, supervision, protection, and control" over their children. We granted review in this case to determine whether on

its face the amendment is so vague or overbroad as to violate constitutional due process requirements. As will appear, we conclude that the amendment withstands challenge on the grounds of both vagueness and overbreadth, and we therefore reverse the judgment of the Court of Appeal.

## I. FACTS AND PROCEDURAL HISTORY

For decades there has been some form of statutory prohibition against the conduct known as "contributing to the delinquency of a minor."[1] Section 272 is the most recent of these provisions, although its "contributing to delinquency" title is incomplete because it explicitly applies not only to delinquency (see Welf. & Inst. Code, §§ 601 [habitually disobedient or truant minors], 602 [minors who commit crimes]) but also to dependency (see id., § 300 [minors within the jurisdiction of juvenile courts by reason of physical, emotional, or sexual abuse, or neglect, among other factors]).

Between 1979 and 1988 section 272 provided, in relevant part: "Every person who commits any act or omits the performance of any duty, which act or omission causes or tends to cause or encourage any person under the age of 18 years to come within the provisions of Sections 300, 601, or 602 of the Welfare and Institutions Code or which act or omission contributes thereto . . . is guilty of a misdemeanor . . . ." In 1988 the Legislature appended a sentence to section 272: "For purposes of this section, a parent or legal guardian to any person under the age of 18 years shall have the duty to exercise reasonable care, supervision, protection, and control over their minor child." (Stats. 1988, ch. 1256, § 2, p. 4182.) This amendment is the object of the present lawsuit.

As part of the bill that included the amendment, the Legislature established a parental diversion program. (Pen. Code, § 1001.70 et seq.) Under specified circumstances the probation department may recommend the diversion of parents or guardians (hereafter collectively referred to as parents) charged under section 272 to an education, treatment, or rehabilitation program prior to trial. Satisfactory completion of the program results in dismissal of the criminal charges.

Plaintiffs, as taxpayers, filed a complaint for injunctive and declaratory relief to halt the enforcement of the amendment, claiming it would constitute a waste of public funds. (Code Civ. Proc., § 526a.) They named as defendants Ira Reiner, as Los Angeles County District Attorney, and James K.

---

[1]See, e.g., Statutes 1909, chapter 133, section 26, page 225; Statutes 1915, chapter 631, section 21, page 1246; Statutes 1937, chapter 369, section 702, page 1033; Statutes 1961, chapter 1616, section 3, page 3503.

Hahn, as Los Angeles City Attorney. (Gilbert Garcetti has since succeeded Reiner as district attorney.) The grounds of the complaint were that the amendment was unconstitutionally vague, overbroad, and an impingement on the right to privacy.

Both sides moved for summary judgment. The trial court granted summary judgment for defendants, concluding that the amendment was neither vague nor overbroad and that plaintiffs lacked standing to challenge it in any case.

Plaintiffs appealed. Reversing the judgment, the Court of Appeal first held that the trial court erred on the question of standing and that plaintiffs had standing as taxpayers.[2] On the merits, the court struck down the amendment as unconstitutionally vague, expressly declining to reach the question of its overbreadth.[3]

## II. VAGUENESS

 The constitutional interest implicated in questions of statutory vagueness is that no person be deprived of "life, liberty, or property without due process of law," as assured by both the federal Constitution (U.S. Const., Amends. V, XIV) and the California Constitution (Cal. Const., art. I, § 7). Under both Constitutions, due process of law in this context requires two elements: a criminal statute must " 'be definite enough to provide (1) a standard of conduct for those whose activities are proscribed and (2) a standard for police enforcement and for ascertainment of guilt.' " (*Walker* v. *Superior Court* (1988) 47 Cal.3d 112, 141 [253 Cal.Rptr. 1, 763 P.2d 852]; see also *Kolender* v. *Lawson* (1983) 461 U.S. 352, 357 [75 L.Ed.2d 903, 908-909, 103 S.Ct. 1855].)

 We evaluate the specificity of the amendment according to the following standards: " 'Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and

[2]Defendants did not challenge plaintiffs' standing on appeal, nor do they do so before this court.

[3]The trial court did not rule on the privacy claim, and plaintiffs did not raise the point on appeal.

juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.'" (*Cranston* v. *City of Richmond* (1985) 40 Cal.3d 755, 763 [221 Cal.Rptr. 779, 710 P.2d 845], quoting *Grayned* v. *City of Rockford* (1972) 408 U.S. 104, 108-109 [33 L.Ed.2d 222, 227-228, 92 S.Ct. 2294], fns. omitted.)

The starting point of our analysis is "the strong presumption that legislative enactments 'must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears. [Citations.] A statute should be sufficiently certain so that a person may know what is prohibited thereby and what may be done without violating its provisions, but it cannot be held void for uncertainty if any reasonable and practical construction can be given to its language.'" (*Walker* v. *Superior Court, supra,* 47 Cal.3d at p. 143.)

A. *Notice*

■ According to the foregoing principles, the amendment is not sufficiently specific unless a parent of ordinary intelligence would understand the nature of the duty of "reasonable care, supervision, protection, and control" referred to therein, as well as what constitutes its omission. Plaintiffs contend the amendment changed the law by creating a new—and impermissibly vague—parental duty as a basis for criminal liability. Defendants reply that the amendment did not change the law; rather, it merely clarified the statute's application to an existing parental duty.[4]

■ "'Where changes have been introduced to a statute by amendment it must be assumed the changes have a purpose . . . .'" (*Times Mirror Co.* v. *Superior Court* (1991) 53 Cal.3d 1325, 1337 [283 Cal.Rptr. 893, 813 P.2d 240].) That purpose is not necessarily to change the law. "While an intention to change the law is usually inferred from a material change in the language of the statute [citations], a consideration of the surrounding circumstances may indicate, on the other hand, that the amendment was merely the result of a legislative attempt to clarify the true meaning of the statute." (*Martin* v. *California Mut. B. & L. Assn.* (1941) 18 Cal.2d 478, 484 [116 P.2d 71].)

■ In support of their contention that the purpose of the amendment was to clarify existing law and facilitate prosecution of parents under section

___

[4]In either case it is clear that parents have always been liable for contributing to the delinquency of a minor under section 272 and its predecessors. Originally the statute provided for liability of "the parent or parents, legal guardian or person having the custody of such child, or any other person . . . ." (Stats. 1909, ch. 133, § 26, p. 225; cf. *In re Sing* (1910) 14 Cal.App. 512, 514 [112 P. 582] ["any other person" not limited to person standing in loco parentis to minor].) This was later amended simply to "[a]ny person" (Stats. 1913, ch. 673, § 28, p. 1303) and is now "[e]very person" (§ 272).

272, defendants offer a declaration to this effect by the legislative assistant to the principal author of the legislation that included the amendment. This declaration is not dispositive of the amendment's purpose. ■ In construing a statute "we do not consider the motives or understandings of an individual legislator even if he or she authored the statute." (*Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 801, fn. 12 [268 Cal.Rptr. 753, 789 P.2d 934]; accord, *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589-590 [128 Cal.Rptr. 427, 546 P.2d 1371].)

■ We therefore turn to the statutory context as a sign of legislative purpose. The Legislature enacted the amendment and the related parental diversion program as part of the Street Terrorism Enforcement and Prevention Act, the premise of which was that "the State of California is in a state of crisis which has been caused by violent street gangs whose members threaten, terrorize, and commit a multitude of crimes against the peaceful citizens of their neighborhoods." (Stats. 1988, ch. 1256, § 1, p. 4179.) The act included measures establishing criminal penalties for gang participation and allowing sentence enhancements for gang-related conduct; defining certain buildings in which gang activities take place as nuisances subject to injunction, abatement, or damages; and prohibiting terrorist threats of death or great bodily injury.

Viewed in the context of the act, i.e., as part of its broad scheme to alleviate the problems caused by street gangs, the amendment to section 272 and the parental diversion program appear intended to enlist parents as active participants in the effort to eradicate such gangs.[5] Because the legislative history of the amendment is sparse, confined largely to the declaration

---

[5]Our Legislature is not unique in addressing the problem of juvenile delinquency by making a parent criminally liable when the parent's failure to supervise or control a child results in the child's delinquency. "Holding parents responsible for juvenile delinquency is not a new concept. Colorado enacted the first law holding parents criminally liable for their children's delinquent acts in 1903." (Note, *Constitutional Limitations on State Power to Hold Parents Criminally Liable for the Delinquent Acts of Their Children* (1991) 44 Vand.L.Rev. 441, 446.) At present, a New York statute provides: "A person is guilty of endangering the welfare of a child when: . . . [¶] [b]eing a parent, guardian or other person legally charged with the care or custody of a child less than eighteen years old, he fails or refuses to exercise reasonable diligence in the control of such child to prevent him from becoming an 'abused child,' a 'neglected child,' a 'juvenile delinquent' or a 'person in need of supervision' . . . ." (N.Y. Penal Law, § 260.10, subd. (2) (Lawyers Coop. 1993); see *People* v. *Scully* (1987) 134 Misc.2d 906 [513 N.Y.S.2d 625, 627] [statute not void for vagueness as applied]; *People* v. *Bergerson* (1966) 17 N.Y.2d 398 [271 N.Y.S.2d 236, 239-240, 218 N.E.2d 288] [predecessor statute not void for vagueness].) A similar Kentucky statute provides: "A parent, guardian or other person legally charged with the care or custody of a minor is guilty of endangering the welfare of a minor when he fails or refuses to exercise reasonable diligence in the control of such child to prevent him from becoming a neglected, dependent or delinquent child." (Ky. Rev. Stat. Ann., § 530.060, subd. (1) (Michie 1992).)

described above, we cannot rule out either plaintiffs' interpretation that the Legislature intended to enlarge the scope of parents' criminal liability or defendants' view that the Legislature merely clarified its scope. But it is not necessary for us to decide this question, for in either case our inquiry is the same: whether a parental duty of "reasonable care, supervision, protection, and control" is sufficiently certain to meet constitutional due process requirements. We conclude that it is because it incorporates the definitions and the limits of parental duties that have long been a part of California dependency law and tort law.

Plaintiffs do not dispute that parents' legal responsibilities in regard to the "care" and "protection" of their children—focusing on forces external to the child that affect the child's own welfare—are well established and defined. For example, Welfare and Institutions Code section 300 contains a lengthy list of conditions under which a minor can be removed from the custody of a parent and declared a dependent child of the court.[6] We agree with the Court of Appeal that section 300 provides guidelines sufficiently specific to delineate the circumstances under which a child will qualify for dependent status and thus to define the parental duty of care and protection that would prevent the occurrence of those circumstances.

Accordingly, we confine the balance of our analysis to section 272 as applied to juvenile delinquency through Welfare and Institutions Code sections 601 and 602, and to the "supervision" and "control" elements of the duty identified in the amendment.

The terms "supervision" and "control" suggest an aspect of the parental duty that focuses on the child's actions and their effect on third parties. This aspect becomes plain when the amendment is read in conjunction with Welfare and Institutions Code sections 601 and 602. Section 601, subdivision (a), brings within the jurisdiction of the juvenile court any minor who, inter alia, "violated any ordinance of any city or county of this state establishing a curfew . . . ." Subdivision (b) of section 601 brings within

---

[6]These conditions include: "(a) The minor has suffered . . . serious physical harm inflicted nonaccidentally upon the minor by the minor's parent or guardian. . . . [¶] (b) The minor has suffered . . . serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the minor . . . . [¶] (c) The minor is suffering serious emotional damage . . . as a result of the conduct of the parent or guardian . . . . [¶] (d) The minor has been sexually abused . . . by his or her parent or guardian or a member of his or her household . . . . [¶] (e) The minor is under the age of five and has suffered severe physical abuse by a parent, or by any person known by the parent, if the parent knew or reasonably should have known that the person was physically abusing the minor. . . . [¶] . . . [¶] (g) The minor has been left without any provision for support . . . . [¶] . . . [¶] (i) The minor has been subjected to an act or acts of cruelty by the parent or guardian or a member of his or her household . . . ."

the jurisdiction of the juvenile court minors for whom "the available public and private services are insufficient or inappropriate to correct the habitual truancy of the minor, or to correct the minor's persistent or habitual refusal to obey the reasonable and proper orders or directions of school authorities . . . ." Section 602 brings within the jurisdiction of the juvenile court any minor who "violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime . . . ."

According to its preamendment language, section 272 thus imposes misdemeanor liability on any person whose act or omission causes or encourages a child to violate a curfew, be habitually truant, or commit a crime—i.e., to engage in delinquent acts. Implicit in this language is the duty to make a reasonable effort to prevent the child from so doing; the breach of that duty violates section 272 only when the person "causes or tends to cause or encourage" the child's delinquency. The amendment here at issue provides more explicitly that *parents* violate section 272 when they omit to perform their duty of reasonable "supervision" and "control" and that omission results in the child's delinquency. Therefore, the Legislature must have intended the "supervision" and "control" elements of the amendment to describe parents' duty to reasonably supervise and control their children so that the children do not engage in delinquent acts.

Parents have long had a duty to supervise and control[7] their children under California tort law. (See, e.g., *Singer* v. *Marx* (1956) 144 Cal.App.2d 637,

---

[7]We note that terms similar to "supervision" and "control" have also been used for some time in dependency law. Indeed, the version of Welfare and Institutions Code section 300, subdivision (a), in effect before, during, and for three months after the enactment of the amendment, referred to "proper and effective parental care or control." (Stats. 1986, ch. 1122, § 2, p. 3976; language changed by Stats. 1987, ch. 1485, § 4, p. 5603, operative Jan. 1, 1989.) Defendants urge that the established meaning of the term "control" in dependency law also serves to clarify its meaning in the amendment.

A reading of dependency cases reveals, however, that the term "parental control" has been employed in those cases primarily in the context of a parent's ability to provide the necessities of life and to refrain from harming the child. (See, e.g., *Marr* v. *Superior Court* (1952) 114 Cal.App.2d 527, 530 [250 P.2d 739] ["the usual incidents of the exercise of control over" a child are "its proper care and support"]; *In re Corrigan* (1955) 134 Cal.App.2d 751, 755 [286 P.2d 32] [mother's inability to exercise proper control evidenced by failure to protect children from abuse by their father and by leading a "nomadic life of moral poverty and insecurity" that kept them out of school]; *In re Edward C.* (1981) 126 Cal.App.3d 193, 202-203 [178 Cal.Rptr. 694] [father's inability to exercise proper parental control evidenced by "cruel and inhuman corporal punishment" of children].) In that context, a parent's success or failure in fulfilling this duty to control is assessed by the resulting care and support given to the child, as measured by statutory standards such as those in Welfare and Institutions Code section 300. (See fn. 6, *ante.*) Thus, "control" in dependency law is roughly synonymous with "care" and "protection" as used in the amendment. The term has not been employed in dependency law in the sense of regulation of a child's behavior or prevention of a child's delinquent conduct.

644 [301 P.2d 440] ["[T]he parent has a special power of control over the conduct of the child, which he is under a duty to exercise reasonably for the protection of others."].) In adding the language of "supervision" and "control" to section 272, the Legislature was thus not imposing a new duty on parents but simply incorporating the definition and limits of a traditional duty.

██ As for the scope of this duty, "California follows the Restatement rule (Rest. 2d Torts, § 316), which finds a 'special relationship' between parent and child, and accordingly places upon the parent 'a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent (a) knows or has reason to know that he has the ability to control his child, and (b) knows or should know of the necessity and opportunity for exercising such control.' " (*Robertson* v. *Wentz* (1986) 187 Cal.App.3d 1281, 1288 [232 Cal.Rptr. 634].)

██ We "assume that in passing a statute the Legislature acted with full knowledge of the state of the law at the time." (*In re Misener* (1985) 38 Cal.3d 543, 552 [213 Cal.Rptr. 569, 698 P.2d 637].) ██ When the amendment was enacted, parental tort liability for breach of the duty of supervision and control was a doctrine of long standing. We thus find the terms "supervision" and "control" in the amendment to section 272 to be consistent with the definition and limits of the parental duty established in the law of torts. Welfare and Institutions Code sections 601 and 602 are, of course, concerned with a child's delinquent behavior, not simply a child's harmful behavior. Therefore, we understand the amendment to describe the duty of reasonable restraint of, and discipline for, a child's delinquent acts by parents who know or should know that their child is at risk of delinquency and that they are able to control the child.

It is true that neither the amendment nor prior case law sets forth specific acts that a parent must perform or avoid in order to fulfill the duty of supervision and control. We nonetheless find the duty to be sufficiently certain even though it cannot be defined with precision.[8] To plaintiffs' complaint that the amendment is subjective and imprecise, defendants reply

---

[8]It is instructive to note that in dependency cases terms similar to "supervision" and "control" have withstood challenge on vagueness grounds even though "[f]ew [dependency] cases have attempted to define 'proper and effective parental care or control' [citation], since in most cases . . . it is easier to describe what is not proper parental care and control." (*In re Edward C., supra*, 126 Cal.App.3d at p. 202; see, e.g., *In re J. T.* (1974) 40 Cal.App.3d 633, 638 [115 Cal.Rptr. 553] [upholding the phrase "proper and effective parental care or control" in former Welfare and Institutions Code section 600, subdivision (a)]; *In re Baby Boy T.* (1970) 9 Cal.App.3d 815, 818-819 [88 Cal.Rptr. 418] [upholding the phrase "incapable of

that the amendment's lack of specificity concerning the boundaries of the duty is both inevitable and desirable. We agree with defendants that it would be impossible to provide a comprehensive statutory definition of reasonable supervision and control. Unlike the statute at issue in *Kolender* v. *Lawson, supra,* 461 U.S. 352, which was invalidated because it failed to provide standards by which to evaluate the "credible and reliable" identification it required, the present amendment is not susceptible of exegesis in an apt sentence or two.

We also agree that a statutory definition of "perfect parenting" would be inflexible and not necessary to identify the egregious breaches of parental duty that come within the statute's purview. The concept of reasonableness serves as a guide for law-abiding parents who wish to comply with the statute. "As the Supreme Court said in *Go-Bart Importing Co.* v. *United States* (1931) 282 U.S. 344, 357 [75 L.Ed.2d 374, 382, 515 S.Ct. 153], 'There is no formula for the determination of reasonableness.' Yet standards of this kind are not impermissibly vague, provided their meaning can be objectively ascertained by reference to common experiences of mankind." (*People* v. *Daniels* (1969) 71 Cal.2d 1119, 1129 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677].) ▪ One can devise hypotheticals to demonstrate the difficulty of deciding whether particular parental acts were reasonable, but "statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." (*United States* v. *National Dairy Corp.* (1963) 372 U.S. 29, 32 [9 L.Ed.2d 561, 565, 83 S.Ct. 594].)

▪ Section 272 holds parents liable only if they are criminally negligent in breaching their duty of supervision and control. This requirement of criminal negligence arises in part from Penal Code section 20, which provides, "In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence." It also arises in part from the Legislature's use of the term "reasonable" in the amendment. The duty to act "reasonably" reflects the applicability of the negligence doctrine —here, criminal, not civil, negligence.

▪ In the criminal context, "ordinary negligence sufficient for recovery in a civil action will not suffice; to constitute a criminal act the defendant's conduct must go beyond that required for civil liability and must amount to a 'gross' or 'culpable' departure from the required standard of care." (*People* v. *Peabody* (1975) 46 Cal.App.3d 43, 47 [119 Cal.Rptr. 780].) ▪ It

supporting or controlling the child in a proper manner" in Civil Code former section 232, subdivision (g)].) As previously noted, of course, the term "parental control" in dependency law is not synonymous with that in tort law. (See fn. 7, *ante.*)

follows that the amendment to section 272 punishes only negligence that exceeds ordinary civil negligence. We have defined criminal negligence as " 'aggravated, culpable, gross, or reckless, that is, . . . such a departure from what would be the conduct of an ordinarily prudent or careful [person] under the same circumstances as to [demonstrate] . . . an indifference to consequences.' " (*People* v. *Penny* (1955) 44 Cal.2d 861, 879 [285 P.2d 926].)

The heightened requirements of the criminal negligence standard in regard to breach of duty alleviate any uncertainty as to what constitutes reasonable supervision or control. Plaintiffs fear the statute punishes parents who could not reasonably know that their child is at risk of delinquency. As we have seen, however, only a parent who "knows or should know of the necessity and opportunity for exercising . . . control" can be held liable in tort for breaching the duty to control a child. (*Robertson* v. *Wentz, supra,* 187 Cal.App.3d at p. 1288.) Similarly, there can be no criminal negligence without actual or constructive knowledge of the risk. (See *People* v. *Rodriguez* (1960) 186 Cal.App.2d 433, 440 [8 Cal.Rptr. 863].) In the setting of involuntary manslaughter, for example, "[c]riminal liability cannot be predicated on every careless act merely because its carelessness results in injury to another. [Citation.] The act must be one which has knowable and apparent potentialities for resulting in death. Mere inattention or mistake in judgment resulting even in death of another is not criminal unless the quality of the act makes it so." (*Ibid.*) Under the criminal negligence standard, knowledge of the risk is determined by an objective test: "[I]f a *reasonable person* in defendant's position would have been aware of the risk involved, then defendant is presumed to have had such an awareness." (*People* v. *Watson* (1981) 30 Cal.3d 290, 296 [179 Cal.Rptr. 43, 637 P.2d 279].) The amendment thus punishes only parents who know or reasonably should know that their child is at risk of delinquency.

Plaintiffs also fear the statute punishes parents who try but fail to control their children. In tort law, however, "[t]he duty of a parent is only to exercise such ability to control his child as he in fact has at the time when he has the opportunity to exercise it and knows the necessity of so doing. The parent is not under a duty so to discipline his child as to make it amenable to parental control when its exercise becomes necessary to the safety of others." (Rest.2d Torts, § 316, com. b.) In other words, a parent who makes reasonable efforts to control a child but is not actually able to do so does not breach the duty of control. This is consistent with the rule that " 'there is no [civil] liability upon the parent unless he has had an opportunity to correct specific propensity on the part of the child, and that it is too much to hold the parent responsible for general incorrigibility and a bad disposition.' " (*Singer* v. *Marx, supra,* 144 Cal.App.2d at p. 644.) A fortiori, parents who reasonably try but are unable to control their children are not criminally negligent.

The criminal negligence standard in regard to breach of duty thus provides notice to law-abiding parents that is consistent with and reinforces the notice provided by the amendment's incorporation of the definition and limits of the tort duty of parental supervision and control. The amendment requires parents who know or reasonably should know of the child's risk of delinquency to exercise their duty of supervision and control. This duty consists of undertaking reasonable—not necessarily successful—efforts at supervision and control. Omission of this duty owing to simple negligence will not subject the parent to criminal liability; a parent can be convicted only for gross or extreme departures from the objectively reasonable standard of care.

In sum, we understand the Legislature to have intended the amendment to provide that there is a duty of reasonable restraint of, and discipline for, a child's delinquent acts by parents who know or should know that their child is at risk of delinquency and that they are able to control the child. Parents who intentionally or with criminal negligence fail to perform this duty, and as a result contribute to the delinquency of the child, violate section 272.

Thus understood, the amendment is specific enough to allow parents to identify and avoid breaches of the duty of supervision and control for which they could be penalized under section 272. The amendment does not trap the innocent. It provides adequate notice to parents with regard to potential criminal liability for failure to supervise and control their children because (1) it incorporates the definition and the limits of a parental duty to supervise and control children that has long been a part of California tort law, and (2) it imposes criminal liability only when the parent engages in conduct that so grossly departs from the standard of care as to amount to criminal negligence.

### B. *Enforcement*

In addition to affording notice to citizens, due process requires that the amendment to section 272 provide standards for its application and adjudication in order to avoid the dangers of arbitrary and discriminatory enforcement. (*Grayned* v. *City of Rockford, supra,* 408 U.S. at pp. 108-109 [33 L.Ed.2d at pp. 227-228].) ▮ Indeed, the requirement of guidelines for law enforcement is "the more important aspect of the vagueness doctrine." (*Kolender* v. *Lawson, supra,* 461 U.S. at p. 358 [75 L.Ed.2d at p. 909].) The reason for its importance is that "[w]here the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" (*Ibid.*)

At issue in *Kolender* v. *Lawson, supra,* 461 U.S. 352, was a statute construed to require people accused of loitering to provide "credible and

reliable" identification. Holding the statute unconstitutionally vague, the high court noted that its lack of any standard for determining how a suspect should meet the requirement "vests virtually complete discretion in the hands of the police to determine whether the suspect has satisfied the statute . . . ." (*Id.* at p. 358 [75 L.Ed.2d at p. 909].)

 Unlike the statute in *Kolender*, the amendment to section 272 as construed herein does not vest "virtually complete discretion" in law enforcement officials. Although the amendment contains no explicit description of the parental duty, it incorporates a preexisting definition from tort law that supplies sufficient guidance to police, prosecutors, and juries charged with enforcing it, and thereby minimizes the danger of arbitrary or discriminatory enforcement.

Application of the criminal negligence standard facilitates enforcement and adjudication of the amendment. Although the standard does not with specificity proscribe parental conduct or omission, it aids those who would enforce parental duty in providing a measure by which to assess a parent's knowledge of or authority over a child's delinquent activities.

The causation element of section 272 also reduces the likelihood of arbitrary or discriminatory enforcement. A parent will be criminally liable only when his or her criminal negligence with regard to the duty of reasonable supervision and control "causes or tends to cause or encourage" the child to come within the provisions of Welfare and Institutions Code sections 601 or 602. The Court of Appeal expressed concern about the difficulty of determining whether there is in fact a causal link between parental behavior and juvenile delinquency. It is true that the causation element of section 272 could be more difficult to apply when the question is whether a parent's failure to supervise or control a child caused the child to become delinquent than when the parent's potentially culpable conduct is of a more direct nature—for example, when the parent is an accomplice of the minor in the commission of a crime. Although there may be circumstances in which reasonable minds could differ as to whether a parent's inadequate supervision or control caused or tended to cause the child's delinquency, the same causation question has been an element of the tort liability of a parent for failure to exercise reasonable supervision and control. In that context, causation has not proved unduly troublesome. Furthermore, the opportunity for parental diversion from criminal prosecution under section 272 in less egregious cases suggests that as a practical matter a parent will face criminal penalties under section 272 for failure to supervise only in those cases in which the parent's culpability is great and the causal connection correspondingly clear.

We therefore conclude that the amendment to section 272 as construed herein does not "impermissibly delegate[] basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." (*Grayned* v. *City of Rockford, supra,* 408 U.S. at pp. 108-109 [33 L.Ed.2d at p. 228].) Although the amendment calls for sensitive judgment in both enforcement and adjudication, we would not be justified in assuming that police, prosecutors, and juries are unable to exercise such judgment.

## III. OVERBREADTH

■ Like a vagueness challenge, an overbreadth challenge implicates the constitutional interest in due process of law. (U.S. Const., Amends. V, XIV; Cal. Const., art. I, §§ 7, subd. (a), 24.) The overbreadth doctrine provides that "a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." (*NAACP* v. *Alabama* (1964) 377 U.S. 288, 307 [12 L.Ed.2d 325, 338, 84 S.Ct. 1302].)

■ Plaintiffs contend that the amendment is overbroad on its face because it infringes on the right of intimate family association protected by both the federal and state Constitutions. This contention is without merit.

■ Plaintiffs emphasize the fundamental nature of the rights at stake in matters of child rearing. We need no convincing of their significance; we have already recognized that "[t]he concept of personal liberties and fundamental human rights entitled to protection against overbroad intrusion or regulation by government . . . extends to . . . [citations] such basic liberties and rights not explicitly listed in the Constitution [as] the right 'to marry, establish a home and bring up children' [citation]; the right to educate one's children as one chooses [citation]; . . . and the right to privacy and to be let alone by the government in 'the private realm of family life.' [Citations.]" (*City of Carmel-by-the-Sea* v. *Young* (1970) 2 Cal.3d 259, 266-267 [85 Cal.Rptr. 1 [466 P.2d 225, 37 A.L.R.3d 1313].)

■ Nevertheless, a facial overbreadth challenge is difficult to sustain. The high court has emphasized that "[a]pplication of the overbreadth doctrine . . . is, manifestly, strong medicine. It has been employed . . . sparingly and only as a last resort." (*Broadrick* v. *Oklahoma* (1973) 413 U.S. 601, 613 [101 L.Ed.2d 1, 17, 108 S.Ct. 2225].) Consequently, to justify a conclusion of facial overbreadth, "the overbreadth of a statute must not only be real, but substantial as well . . . ." (*Id.* at p. 615 [37 L.Ed.2d at p. 842].)

Applying this test, the high court declined to strike down a statute altering the definition of "private" clubs for antidiscrimination purposes because the plaintiff failed to "demonstrate from the text of [the statute] and from actual fact that a substantial number of instances exist in which the [statute] cannot be applied constitutionally. . . . No record was made in this respect, we are not informed of the characteristics of any particular clubs, and hence we cannot conclude that the [statute] threatens to undermine the associational or expressive purposes of any club, let alone a substantial number of them." (*New York State Club Assn.* v. *New York City* (1988) 487 U.S. 1, 14 [101 L.Ed.2d 1, 17, 108 S.Ct. 2225].)

■■■■ Here plaintiffs likewise fail to show that the amendment is substantially overbroad. Their argument consists of brief and general assertions of the amendment's "limitless reach" into "virtually every aspect of child rearing and intimate family association," authorizing "law enforcement personnel to second guess *every* parental decision . . . ." (Italics added.) These assertions lack the kind of particularity required by the high court in *New York State Club Assn.* v. *New York City, supra,* 487 U.S. at page 14 [101 L.Ed.2d at pages 16-17], and, by themselves, do not compel the conclusion that the statute is overbroad. Although the right of intimate family association is constitutionally protected, a statute that seeks to regulate parental behavior is not overbroad per se.

Moreover, plaintiffs premise their assertions on the contention that the amendment makes a "standardless intrusion . . . into the intimate area of parent-child relationships." As discussed in our vagueness analysis (pt. II, *ante*), however, the amendment is not standardless: it incorporates the definition and limits of the parental tort duty of supervision and control. That definition and those limits guard against any excessive sweep by the criminal prohibition. Because plaintiffs do not show that "a substantial number of instances exist in which the [amendment as construed] cannot be applied constitutionally" (*New York State Club Assn.* v. *New York City, supra,* 487 U.S. at p. 14 [101 L.Ed.2d at p. 17]), we "cannot conclude that the [amendment] is substantially overbroad and must assume that 'whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.' [Citation.]" (*Ibid.*)

We therefore conclude that the amendment to section 272 does not, on its face, "sweep unnecessarily broadly and thereby invade the area of protected freedoms.' " (*NAACP* v. *Alabama, supra,* 377 U.S. at p. 307 [12 L.Ed.2d at p. 338].)

The judgment of the Court of Appeal is reversed with directions to affirm the judgment of the trial court.

Lucas, C. J., Panelli, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.