[No. C057410. Third Dist. Sept. 10, 2008.]

DEPARTMENT OF CORRECTIONS AND REHABILITATION, Petitioner,
v.
WORKERS' COMPENSATION APPEALS BOARD, Respondent;
JAMES E. ALEXANDER, Real Party in Interest.

912

**COUNSEL**

Matheny Sears Linkert & Jaime, Michael A. Bishop and Jennifer J. Schultz for Petitioner.

No appearance for Respondent.

Peter J. Donoghue for Real Party in Interest.

Robert J. Sherwin for Los Angeles Professional Peace Officers Association, Los Angeles Police Protective League, Los Angeles County Firefighters Association, United Firefighters of Los Angeles City, and The California State Firefighters Association as Amici Curiae on behalf of Real Party in Interest.

**OPINION**

**SIMS, Acting P. J.—**

## INTRODUCTION

In 2004, as part of a comprehensive reform of workers' compensation law adopted as urgency legislation, the Legislature enacted Senate Bill No. 899 (2003–2004 Reg. Sess.) (Senate Bill 899), which contained a provision that, on its face, required every permanent disability award to be apportioned to the extent that the disability did not arise out of and in the course of employment. (Lab. Code, § 4663, added by Stats. 2004, ch. 34, § 34, eff. Apr. 19, 2004.)[1] But the Legislature did not repeal or amend previously enacted provisions, which had established a different rule for public safety officers: (1) any specified injury or illness which developed or manifested itself during the officer's service was rebuttably ("disputably") presumed to have arisen out of and in the course of employment; (2) absent controverting evidence, the Workers' Compensation Appeals Board (WCAB) had to find in accordance with this presumption; and (3) the injury or illness could not be attributed to any preexisting disease. (§§ 3212–3213.2.)[2]

---

[1] Undesignated section references are to the Labor Code.

Omitting the subsequent amendment at issue in this case, section 4663 provides:

"(a) Apportionment of permanent disability shall be based on causation.

"(b) Any physician who prepares a report addressing the issue of permanent disability due to a claimed industrial injury shall in that report address the issue of causation of the permanent disability.

"(c) In order for a physician's report to be considered complete on the issue of permanent disability, the report must include an apportionment determination. A physician shall make an apportionment determination by finding what approximate percentage of the permanent disability was caused by the direct result of injury arising out of and occurring in the course of employment and what approximate percentage of the permanent disability was caused by other factors both before and subsequent to the industrial injury, including prior industrial injuries. If the physician is unable to include an apportionment determination in his or her report, the physician shall state the specific reasons why the physician could not make a determination of the effect of that prior condition on the permanent disability arising from the injury. The physician shall then consult with other physicians or refer the employee to another physician from whom the employee is authorized to seek treatment or evaluation in accordance with this division in order to make the final determination.

"(d) An employee who claims an industrial injury shall, upon request, disclose all previous permanent disabilities or physical impairments."

[2] Section 3212, which applies to members of a sheriff's office or the California Highway Patrol (CHP), to inspectors and investigators employed by district attorneys, and to members of police or fire departments, covers hernia, heart trouble, and pneumonia. Section 3212.1, which applies to active firefighters and peace officers, covers cancer. Section 3212.2, which applies to custodial, supervisory, and security officers and employees of the Department of Corrections, the Department of Youth Authority, and Atascadero State Hospital, covers heart trouble. Section 3212.3, which applies to persons employed by CHP as peace officers within

An uncodified section of the 2004 legislation provided: "The amendment, addition, or repeal of, any provision of law made by this act shall apply prospectively from the date of enactment of this act, regardless of the date of injury, unless otherwise specified, but shall not constitute good cause to reopen or rescind, alter, or amend any existing order, decision, or award of the Workers' Compensation Appeals Board." (Sen. Bill 899, § 47.)

In 2006, the Legislature passed and the Governor signed Assembly Bill No. 1368 (2005–2006 Reg. Sess.) (Assembly Bill 1368), which amended section 4663 by adding subdivision (e) (section 4663(e)), which provides: "Subdivisions (a), (b), and (c) shall not apply to injuries or illnesses covered under Sections 3212, 3212.1, 3212.2, 3212.3, 3212.4, 3212.5, 3212.6, 3212.7, 3212.8, 3212.85, 3212.9, 3212.10, 3212.11, 3212.12, 3213, and 3213.2." (§ 4663(e), added by Stats. 2006, ch. 836.) An uncodified section of the enacting legislation provides: "It is the intent of the Legislature that this act be construed as declaratory of existing law." (Assem. Bill 1368, § 2.)

After considering this history, the WCAB here concluded that section 4663(e) was in effect as of the effective date of section 4663. Petitioner, Department of Corrections and Rehabilitation (the Department), contends that the WCAB erred and section 4663(e) applies only prospectively from the date of its enactment. We disagree with petitioner and agree with the WCAB. Since the Legislature did not repeal or alter section 3212 et seq. when it enacted section 4663, the latter's subsequent amendment merely made express what the Legislature's prior actions implied: that section 3212 et seq. remained good law notwithstanding enactment of section 4663.

---

the meaning of Vehicle Code section 2250.1, covers heart trouble and pneumonia. Section 3212.4, which applies to regular full-time members of University of California fire departments, covers heart trouble, hernia, and pneumonia. Section 3212.5, which applies to police officers, regular, full-time CHP officers, sheriffs or sheriff's deputies, and district attorneys' inspectors and investigators, covers heart trouble and pneumonia. Section 3212.6, which applies to all of the previously enumerated classes of officers, covers tuberculosis. Section 3212.7, which applies to full-time civil service "state safety" employees of the Department of Justice, covers heart trouble, hernia, pneumonia, and tuberculosis. Section 3212.8, which applies to all the enumerated classes of officers, covers blood-borne infectious diseases. Section 3212.85, which covers peace officers within the meaning of Penal Code sections 830.1 through 830.5 and members of a fire department, covers exposure to biochemical substances. Section 3212.9, which applies to most of the enumerated classes of officers, covers meningitis. Section 3212.10, which covers custodial and supervisory peace officers employed by the Department of Corrections and Rehabilitation and the Youth Authority and locally employed peace officers within the meaning of Penal Code section 830.5, covers heart trouble, hernia, pneumonia, tuberculosis, and meningitis. Section 3212.11, which applies to publicly employed lifeguards, covers skin cancer. Section 3212.12, which applies to peace officers, corpsmembers as defined by Public Resources Code section 14302, and other specified employees of the California Conservation Corps, covers Lyme disease. Section 3213, which applies to members of the University of California Police Department, covers heart trouble and pneumonia. Section 3213.2, which applies to most peace officers, covers lower back impairments.

## FACTUAL AND PROCEDURAL BACKGROUND

Real party in interest James E. Alexander was employed by the Department through July 26, 2005, as a correctional officer at Solano State Prison. In September 2006, he filed an application for adjudication of his workers' compensation claim, alleging injury to his heart, cardiovascular system, and left shoulder. (Cf. §§ 3212.2, 3212.10.)

On April 26, 2007, the parties stipulated before Workers' Compensation Administrative Law Judge Robinson, as relevant: (1) Alexander sustained injury to the heart and left shoulder arising out of and in the course of employment. (2) He had received permanent disability compensation since on or around February 20, 2006. (3) Without apportionment, his permanent disability was 78 percent; apportionment, if legally appropriate, would be at the level of 11 percent. The issue to be litigated was whether section 4663(e) was in effect before January 1, 2007, barring apportionment of that part of Alexander's permanent disability that had accrued as of then.

On August 8, 2007, Judge Robinson issued a decision in Alexander's favor, finding: (1) Section 4663(e) "is declaratory of existing law."[3] (2) It applies retroactively to dates of injury preceding its enactment date (Jan. 1, 2007). (3) The Legislature intended it to apply retroactively.

On September 4, 2007, acting by and through its adjusting agent, State Compensation Insurance Fund—State Contract Services, petitioner filed a petition for reconsideration.

On September 25, 2007, Judge Robinson recommended in writing that the WCAB deny the petition.

On October 4, 2007, WCAB Presiding Judge Cuneo issued an order and decision denying reconsideration and incorporating Judge Robinson's report and recommendation.

The Department filed a petition for writ of mandate and/or prohibition in this court. We treated the petition as a petition for writ of review and issued the writ. Real party in interest Alexander filed a reply brief; we also granted leave to Los Angeles County Professional Peace Officers Association, Los Angeles Police Protective League (for Los Angeles Police Department), County of Los Angeles Firefighters' Association, United Firefighters of Los

---

[3] Since everyone agreed that section 4663(e) was in effect as of January 1, 2007 (and therefore "declaratory of existing law" by definition on the date of this decision), it would have been more precise to find on this point that section 4663(e) was declaratory of existing law when enacted.

Angeles City (for Los Angeles Fire Department), and California State Firefighters' Association to file an amicus curiae brief. We now uphold the WCAB's order and decision and deny the relief requested by the Department.

## DISCUSSION

### Section 4663(e), when enacted, declared existing law

As we have explained, when enacting section 4663 the Legislature left in place the existing provisions that barred attributing certain public safety officers' employment-related disabilities to a preexisting condition (§§ 3212–3213.2), though section 4663 facially requires such attribution. When the Legislature later enacted section 4663(e), which codified the exemption of "injuries or illnesses covered under" sections 3212 through 3213.2 from apportionment under section 4663, it called the new provision "declaratory of existing law." For the reasons that follow, we agree.

We decide questions of statutory construction independently. But in doing so, we consider and respect the interpretation of a statute by an administrative agency charged with its enforcement. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 6–7 [78 Cal.Rptr.2d 1, 960 P.2d 1031].)

We read related provisions together as part of an overall statutory scheme, so as to harmonize them and give them all effect if possible. (*People v. King* (1993) 5 Cal.4th 59, 69 [19 Cal.Rptr.2d 233, 851 P.2d 27]; *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323] (*Dyna-Med*).) As a corollary, we presume that when the Legislature enacts a statute it does not intend to repeal or abrogate any other statute by implication. (*People v. Bouzas* (1991) 53 Cal.3d 467, 480 [279 Cal.Rptr. 847, 807 P.2d 1076] (*Bouzas*).) Though we begin with the language of the statutory scheme, if that presents an irreducible ambiguity we consult the statute's legislative history. (*Dyna-Med, supra,* 43 Cal.3d at p. 1387.)

" '[A] statute that merely *clarifies,* rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment' 'because the true meaning of the statute remains the same.' [Citation.] . . . But if the amendment changed the law . . . , the question of retroactivity arises." (*McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 471–472 [20 Cal.Rptr.3d 428, 99 P.3d 1015] (*McClung*).)

"Th[e] purpose [of amending a statute] is not necessarily to change the law. 'While an intention to change the law is usually inferred from a material change in the language of the statute [citations], a consideration of

the surrounding circumstances may indicate, on the other hand, that the amendment was merely the result of a legislative attempt to clarify the true meaning of the statute.' [Citation.]" (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 568 [20 Cal.Rptr.2d 341, 853 P.2d 507].)

The Legislature's statement that an enactment is intended to declare existing law does not bind us, because it is for the courts to determine " 'what [the law] *did* mean.' [Citation.]" (*McClung, supra,* 34 Cal.4th at p. 473.) "Nevertheless, the Legislature's expressed views on the prior import of its statutes are entitled to due consideration, and we cannot disregard them." (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 244 [62 Cal.Rptr.2d 243, 933 P.2d 507].)

Here, we have a facial contradiction between section 4663, as originally enacted, and sections 3212 through 3213.2, which neither the Legislature nor the courts addressed before the passage of section 4663(e). Thus, to understand why the Legislature stated in enacting the latter provision that it declared existing law, we examine its history. In doing so, we consider only documents that serve as valid indicia of legislative intent. (*Dyna-Med, supra,* 43 Cal.3d at p. 1387; *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 31–37 [34 Cal.Rptr.3d 520].)

The proponents of Assembly Bill 1368, which enacted section 4663(e), maintained that when the Legislature enacted section 4663 through Senate Bill 899, it did not intend to abrogate the public safety officer nonattribution presumptions (§§ 3212–3213.2). As first drafted, Senate Bill 899 did not affect or amend these presumptions in any way, and its author had had an understanding with the interested parties that the bill would preserve the presumptions. On its way to passage, however, amendments to other code sections inadvertently affected sections 3212 through 3213.2; therefore it was now necessary to clarify the law by amendment. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1368 (2005–2006 Reg. Sess.) as amended June 15, 2006; Sen. Com. on Labor and Industrial Relations, Analysis of Assem. Bill No. 1368 (2005–2006 Reg. Sess.) as amended June 15, 2006; Assemblymembers Karnette and Umberg, letter to Governor Schwarzenegger, Sept. 8, 2006.)

The opponents of Assembly Bill 1368 agreed that section 4663 did not repeal the nonattribution presumptions. Because they claimed that apportionment was consistent with those presumptions, however, they called section 4663(e) a change in the law. (Sen. Com. on Labor and Industrial Relations, Analysis of Assem. Bill No. 1368 (2005–2006 Reg. Sess.) as amended June

15, 2006; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1368 (2005–2006 Reg. Sess.) as amended June 15, 2006.)

Finally, the Legislative Counsel's Digest of Assembly Bill 1368 states:

"Existing workers' compensation law generally requires employers to secure the payment of workers' compensation, including medical treatment, for injuries incurred by their employees that arise out of, or in the course of, employment.

"Existing law provides that, in the case of certain state and local public safety members, the term 'injury' includes hernia, heart trouble, and pneumonia that developed or manifested itself during a period while the person is in that service. *Existing law further establishes a disputable presumption in this regard and prohibits these medical conditions from being attributed to any disease existing prior to the development or manifestation of that medical condition.*

"Existing law requires any physician who prepares a report addressing the issue of permanent disability due to a claimed industrial injury to address the issue of causation of the permanent disability.

"This bill would exempt the above medical conditions for certain public safety members and employees from the application of this requirement." (Italics added.)

Thus, both sides in the debate over Assembly Bill 1368 agreed that section 4663 was not intended to repeal the nonattribution presumptions of sections 3212 through 3213.2 and did not do so by implication. (Cf. *Bouzas, supra*, 53 Cal.3d at p. 480.) The Legislative Counsel's Digest, which calls those presumptions "existing law," confirms that fact. Therefore, when the Legislature stated that section 4663(e) declared existing law, it spoke accurately.

Petitioner's contrary arguments are unpersuasive.

Petitioner asserts: (1) the Legislature is presumed to know that statutes normally operate prospectively; (2) section 4663(e) on its face and the circumstances of its enactment do not show that the Legislature intended it to operate retrospectively; (3) therefore, it operates prospectively. (Cf. *Aetna Cas. & Surety Co. v. Ind. Acc. Com.* (1947) 30 Cal.2d 388, 391 [182 P.2d 159].) But the question whether a provision operates prospectively or retrospectively is inapt if the provision clarifies existing law. Such a provision's true "effective date" is that of the law it clarifies.

Petitioner asserts that section 4663(e) took effect prospectively because (1) it was not enacted as urgency legislation, and (2) when codified was declared effective as of January 1, 2007—the normal effective date for legislation passed during the 2006 session. (Cal. Const., art. IV, § 8, subd. (c); Gov. Code, § 9600.) But even assuming section 4663(e) was effective only on January 1, 2007, it was in place on August 8, 2007, when Judge Robinson relied on it to conclude that section 4663(e) was declaratory of (pre)existing law and therefore ruled in favor of Alexander. Judge Robinson ruled correctly.

Relying on *McClung, supra,* 34 Cal.4th 467, petitioner asserts that the amendment changed the law by changing the rules on apportionment to impose greater liability on government entities employing public safety officers. (See *id.* at p. 475.) But, as we have shown, the Legislature properly determined that the amendment did not change the law. Therefore, it did not increase government entities' liability: it merely clarified that section 4663 did not reduce their liability. By contrast, the amendment at issue in *McClung* changed the law by abrogating a court decision that had construed the unamended statute (*McClung, supra,* 34 Cal.4th at pp. 470–475); because no court construed the aspect of section 4663 at issue here before its amendment, *McClung* is inapposite.

Lastly, petitioner asserts that after section 4663 was enacted it routinely obtained apportionment of permanent disability awards to its employees. This point is forfeited because petitioner does not support it by record citation. (Cal. Rules of Court, rule 8.204(a)(1)(C); *Baxter Healthcare Corp. v. Denton* (2004) 120 Cal.App.4th 333, 368 [15 Cal.Rptr.3d 430].) But even if such apportionments were made, it would not follow that they were made lawfully.

■ As the WCAB found, section 4663(e), when enacted, declared existing law. That law provided that Alexander's injury to his heart should not be apportioned. (§ 3212.2.) The WCAB correctly declined to apportion Alexander's heart injury.

Petitioner asserts that an affirmance will greatly increase its liability to permanently disabled employees similarly situated to real party in interest Alexander, thus unfairly imposing "new, unbudgeted burdens" on petitioner. As we have explained, however, section 4663 as originally enacted did not reduce petitioner's liability and section 4663(e) did not increase it. If petitioner now risks financial hardship because it miscalculated its obligations under the law, it must address this concern "on the other side of Tenth Street, in the halls of the Legislature." (*Osborn v. Hertz Corp.* (1988) 205 Cal.App.3d 703, 711 [252 Cal.Rptr. 613].)

## DISPOSITION

The judgment (the Workers' Compensation Appeal Board's order and decision) is affirmed.

Raye, J., and Hull, J., concurred.

A petition for a rehearing was denied September 29, 2008, and petitioner's petition for review by the Supreme Court was denied November 19, 2008, S167642.