185 Cal.App.4th 393 (2010)
110 Cal.Rptr.3d 305
AMERICAN NURSES ASSOCIATION et al., Plaintiffs and Respondents,
v.
JACK O'CONNELL, as Superintendent, etc., et al., Defendants and Appellants;
AMERICAN DIABETES ASSOCIATION, Intervener and Appellant.
No. C061150.
Court of Appeals of California, Third District.
June 8, 2010.
*400 Remcho, Johansen & Purcell, Robin B. Johansen and Kari Krogseng for Defendants and Appellants.
Reed Smith, James M. Wood, Paul D. Fogel, Dennis Peter Maio; Disability Rights Education and Defense Fund, Inc., Arlene Mayerson and Larisa Cummings for Intervener and Appellant.
Alice L. Bodley, Maureen E. Cones; Pillsbury Winthrop Shaw Pittman, John S. Poulos, Carrie L. Bonnington; and Pamela Allen for Plaintiffs and Respondents.

OPINION
CANTIL-SAKAUYE, J. 
In this case we consider not whether California law should, but whether California law does, allow designated voluntary school personnel, who are not licensed nurses, to administer insulin to diabetic students who require the injections under a "Section 504 Plan" (29 U.S.C. § 794; 34 C.F.R. § 104.1 et seq. (2009)) or individualized education program (IEP) (20 U.S.C. § 1414(d)). Like the trial court, we conclude the answer is no. We shall affirm the judgment and peremptory writ of mandate issued by the trial court.

PROCEDURAL BACKGROUND
(1) Federal law prohibits discrimination against students with disabilities through three federal acts: the Rehabilitation Act of 1973 (29 U.S.C. § 794) (Section 504), the Americans with Disabilities Act of 1990 (42 U.S.C. § 12132), and the Individuals with Disabilities Education Act (20 U.S.C. § 1400 et seq.) as amended by the Individuals with Disabilities Education Improvement Act of 2004 (Pub.L. No. 108-446 (Dec. 3, 2004) 118 Stat. 2647) (IDEA). Federal law recognizes students with disabilities have a right to receive a free appropriate public education, including related aids and services necessary for them to access that education. (34 C.F.R. §§ 104.33, 300.320, 300.323 (2009).)[1]
In 2005, the American Diabetes Association (ADA) and several California public school students with diabetes, through their guardians, filed a class action suit against Jack O'Connell, in his capacity as the superintendent of *401 public schools for California, the State Board of Education and the individual members of the State Board of Education, California's State Department of Education (CDE), and two local school districts and their superintendents. The federal plaintiffs alleged defendants violated the federal law by failing to ensure the provision of health care services to students with diabetes, including insulin administration, that was necessary to enable those students to obtain free appropriate public education. (K.C. v. O'Connell (N.D.Cal., No. C05-4077 MMC).)
The parties reached a settlement in 2007 which, among other things, required the CDE to issue a specific legal advisory regarding the rights of students with diabetes in California's K-12 public schools. Based on the parties' settlement agreement, the district court dismissed the federal action.
The CDE issued the legal advisory as required by the settlement agreement. As relevant to this case, the legal advisory takes the position that in order to comply with federal law, California law should be interpreted to allow, if a licensed person is not available or feasible, trained unlicensed school employees to administer insulin during the school day to a student whose Section 504 Plan or IEP requires such insulin administration. The legal advisory summarizes who may administer insulin in California schools as follows:
"Business and Professions Code section 2725[, subdivision] (b)(2) and the California Code of Regulations, Title 5, section 604 authorize the following types of persons to administer insulin in California's public schools pursuant to a Section 504 Plan or an IEP:
"1. self administration, with authorization of the student's licensed health care provide[r] and parent/guardian;
"2. school nurse or school physician employed by the LEA [local education agency];
"3. appropriately licensed school employee (i.e., a registered nurse or a licensed vocational nurse) who is supervised by a school physician, school nurse, or other appropriate individual;
"4. contracted registered nurse or licensed vocational nurse from a private agency or registry, or by contract with a public health nurse employed by the local county health department;
"5. parent/guardian who so elect;
*402 "6. parent/guardian designee, if parent/guardian so elects, who shall be a volunteer who is not an employee of the LEA; and
"7. unlicensed voluntary school employee with appropriate training, but only in emergencies as defined by Section 2727[, subdivision] (d) of the Business and Professions Code (epidemics or public disasters).
"When no expressly authorized person is available under categories 2-4, supra, federal lawthe Section 504 Plan or the IEPmust still be honored and implemented. Thus, a category #8 is available under federal law:
"8. voluntary school employee who is unlicensed but who has been adequately trained to administer insulin pursuant to the student's treating physician's orders as required by the Section 504 Plan or the IEP." (Fn. omitted, italics added.)
Almost immediately, the American Nurses Association and the American Nurses Association/California (hereafter we will refer to all plaintiffs/petitioners as the Nurses Associations) filed this action against O'Connell as superintendent of public instruction and the CDE (hereafter together, CDE) challenging section 8, the portion of the legal advisory that permits unlicensed school employees to administer insulin to students with diabetes. The Nurses Associations alleged, as pertinent on appeal, that section 8 is inconsistent with the Nursing Practice Act (NPA) (Bus. & Prof. Code, § 2700 et seq.) and is an illegal regulation implemented by the CDE without compliance with the Administrative Procedure Act (APA) (Gov. Code, § 11340 et seq.). The trial court granted the ADA leave to intervene and file a complaint in intervention in support of the CDE's legal advisory. Subsequently, first and second amended petitions for writ of mandate and complaints for declaratory and injunctive relief were filed adding the California School Nurses Organization and the California Nurses Association as plaintiffs/petitioners. Documentary evidence was submitted. The matter was briefed and argued.
In its ruling on the case, the trial court agreed that as a matter of policy, unlicensed trained school personnel should be authorized to administer insulin to diabetic students, but found they were not authorized to do so under current law. The court concluded California law authorizes "the administration of insulin to a student only by a licensed health care professional acting within the scope of practice for which he or she is licensed under the Business and Professions Code (e.g., a nurse licensed under the [NPA], Business and Professions Code section 2700 et seq., to perform services within the meaning of Business and Professions Code section 2725) or by an unlicensed person who is expressly authorized by statute to administer insulin *403 in specified circumstances . . . ." The trial court concluded Education Code sections 49423 and 49423.6 did not authorize the CDE to permit unlicensed school personnel to administer insulin if they were not otherwise statutorily permitted to do so. The trial court rejected the contention that the state statutes conflict with or impede implementation of the federal requirements for the administration of insulin by qualified personnel. "Rather the statutes identify licensed health care professionals and certain unlicensed persons who are qualified to administer insulin, ruling out any basis for federal preemption." The trial court determined the challenged portion of the legal advisory was invalid under current law. The trial court also concluded, as an alternative ruling, that the challenged portion of the legal advisory was invalid as a regulation which had not been adopted in accordance with the APA.
The trial court issued a peremptory writ of mandate directing the CDE to refrain from implementing or enforcing the portions of the legal advisory that authorize the administration of insulin to students by school personnel who are not authorized to administer it under state statutes and to remove those portions from its legal advisory.
The CDE and the ADA appeal. We granted the motion of the ADA, joined in by the CDE, to confirm the automatic stay of the judgment pending appeal.
We now conclude the trial court correctly determined the portion of the legal advisory, authorizing unlicensed designated school personnel to administer insulin to diabetic students in nonemergency situations, is inconsistent with California law and therefore, invalid. We need not reach the trial court's alternate basis for invalidating the challenged portion of the legal advisory under the APA.

DISCUSSION
The ADA and CDE (appellants) contend the trial court erroneously invalidated the challenged portion of the legal advisory by reading Business and Professions Code section 2725 (section 2725) too broadly and Education Code section 49423 (section 49423) too narrowly. Appellants claim the trial court failed to construe these two statutes in harmony so as to avoid frustrating federal law. Appellants claim the legal advisory is consistent with section 49423 and not inconsistent with section 2725.
The Nurses Associations contend the NPA prohibits unlicensed persons from performing the functions of a nurse, that section 2725 includes the administration of medications as a function of a nurse, and that there is no statutory exception to section 2725, even under section 49423, allowing unlicensed school personnel to administer insulin injections to students absent *404 an emergency or epidemic. The Nurses Associations argue the trial court properly determined federal law does not preempt the licensing requirements of the NPA. We conclude the Nurses Associations have the better legal argument.

I.

Unlicensed School Personnel Lack Statutory Authority to Administer Insulin to Students Who Require the Injections Under a Section 504 Plan or IEP

A. Standard of Review

The applicable standard of review in this case, as the parties agree, is de novo review since the issue of whether the challenged portion of the legal advisory is authorized by California law turns on the interpretation of the applicable statutes. (Robertson v. Health Net of California, Inc. (2005) 132 Cal.App.4th 1419, 1425 [34 Cal.Rptr.3d 547]; Boyer v. Jones (2001) 88 Cal.App.4th 220, 222 [105 Cal.Rptr.2d 824].)

B. The Nursing Practice Act (NPA)

(1) The Definition of Nursing in the NPA

(2) "The original California statutes dealing with registered nurses did not expressly define or restrict their functions but merely provided for their certification or registration. (Stats. 1908, ch. CDV, § 1, p. 533; Stats. 1913, ch. 319, § 1, p. 613.)" (64 Ops.Cal.Atty.Gen. 240, 243, fn. 6 (1981).) Since 1939, however, the NPA has provided an express statutory definition of the functions of a nurse (§ 2725) and has prohibited "the practice of nursing," as defined in section 2725, without holding a license as a registered nurse (Bus. & Prof. Code, § 2732). (Stats. 1939, ch. 807, § 2, pp. 2346, 2349-2350.) Indeed, it is a misdemeanor under the NPA to either practice nursing without an active license or to use any title, sign, card or device to indicate a qualification to practice nursing unless the person has been duly licensed as a nurse. (Bus. & Prof. Code, §§ 2795, 2799.) It is a misdemeanor to impersonate a professional nurse or pretend to be licensed to practice nursing. (Bus. & Prof. Code, §§ 2796, 2799.) Thus, contrary to the argument of appellants that the NPA "provides that only a registered nurse may engage in the practice of registered nursing as a professional registered nurse," the NPA does more than prevent individuals from holding themselves out as *405 registered nurses in the performance of nursing duties.[2] It also affirmatively restricts unlicensed persons from performing the functions of a licensed nurse. We turn to the question of whether administering an insulin injection is a function of a licensed nurse as defined by section 2725.
(3) "`"As in any case involving statutory interpretation, our fundamental task is to determine the Legislature's intent so as to effectuate the law's purpose." [Citation.]' [Citation.] Statutory interpretation begins with an analysis of the statutory language. [Citation.] `If the statute's text evinces an unmistakable plain meaning, we need go no further.' [Citation.] If the statute's language is ambiguous, we examine additional sources of information to determine the Legislature's intent in drafting the statute. [Citations.]" (Olson v. Automobile Club of Southern California (2008) 42 Cal.4th 1142, 1147 [74 Cal.Rptr.3d 81, 179 P.3d 882].) We may also provisionally examine legislative history and other extrinsic matters to confirm a plain meaning construction. (Hughes v. Pair (2009) 46 Cal.4th 1035, 1046 [95 Cal.Rptr.3d 636, 209 P.3d 963]; see City of Sacramento v. Public Employees' Retirement System (1994) 22 Cal.App.4th 786, 795 [27 Cal.Rptr.2d 545].)
Prior to 1974, former section 2725 defined the practice of nursing as "the performing of professional services requiring technical skills and specific knowledge based on the principles of scientific medicine, such as are acquired by means of a prescribed course in an accredited school of nursing . . ., and practiced in conjunction with curative or preventive medicine as prescribed by a licensed physician and the application of such nursing procedures as involve understanding cause and effect in order to safeguard life and health of a patient and others." (Stats. 1968, ch. 348, § 1, p. 733.)
In 1974, the California Legislature revised section 2725 (Stats. 1974, ch. 355, § 1, p. 686; Stats. 1974, ch. 913, § 1, p. 1927) and since that time, subdivision (b) of section 2725 has defined the "practice of nursing" as "those functions, including basic health care, that help people cope with difficulties in daily living that are associated with their actual or potential *406 health or illness problems or the treatment thereof, and that require a substantial amount of scientific knowledge or technical skill, including all of the following: [¶] . . . [¶] (2) Direct and indirect patient care services, including, but not limited to, the administration of medications and therapeutic agents, necessary to implement a treatment, disease prevention, or rehabilitative regimen ordered by and within the scope of licensure of a physician . . . ." (Italics added.)
(4) The plain language of section 2725, subdivision (b)(2) includes in the functions of a nurse as defined generally by subdivision (b) "the administration of medications" ordered by a physician. (§ 2725, subd. (b)(2).) While the NPA does not define the term "administration," we find guidance (see 64 Ops.Cal.Atty.Gen., supra, at p. 242, fn. 5) in the Pharmacy Law (Bus. & Prof. Code, § 4000 et seq.) which defines "administer" as "the direct application of a drug . . . to the body of a patient . . . by injection, inhalation, ingestion, or other means." (Bus. & Prof. Code, § 4016, italics added.) Similarly, the California Uniform Controlled Substances Act (Health & Saf. Code, § 11000 et seq.) defines "administer," in pertinent part, as "the direct application of a controlled substance, whether by injection, inhalation, ingestion, or any other means, to the body of a patient for his immediate needs . . . ." (Health & Saf. Code, § 11002, italics added.) There is nothing in the NPA to indicate a different meaning of the term "administer." (5) It is a general rule of statutory construction to construe words or phrases in one statute in the same sense as they are used in a closely related statute pertaining to the same subject. (In re Do Kyung K. (2001) 88 Cal.App.4th 583, 589 [106 CaR2d 31]; Estate of Hoertkorn (1979) 88 Cal.App.3d 461, 465-466 [151 Cal.Rptr. 806].) The parties do not dispute insulin is a medication. Therefore, the injection of insulin into diabetic students would appear to fall within the "administration of medications"a practice of nursing.
The ADA and the CDE argue against this plain meaning construction of section 2725. They contend only those administrations of medication that require "a substantial amount of scientific knowledge or technical skill" (§ 2725, subd. (b)) fall within the definition of the practice of nursing.[3] Appellants rely on a portion of a 1988 opinion of the California Attorney General that considered whether a hired home care companion could administer *407 drugs to his or her employer. (71 Ops.Cal.Atty.Gen. 190 (1988).) The opinion considered, among other things, the definition of nursing in section 2725. (71 Ops.Cal.Atty.Gen., supra, at pp. 197-199.) The opinion stated the belief that the Legislature's purpose in identifying "the administration of medications and therapeutic agents, necessary to implement a treatment regimen ordered by a physician" as a nursing function in section 2725, subdivision (b), "was not to add conduct which did not require a substantial amount of scientific knowledge or technical skill into the definition of the practice of nursing but to assure that the actions which introduce medications and therapeutic agents into the body of a patient which do require a substantial amount of scientific knowledge or technical skill, such as injections by hypodermic syringe, were included in the definition of the practice of nursing." (71 Ops.Cal.Atty.Gen., supra, at p. 198.) Appellants argue this statement supports the conclusion that administration of medication is not the practice of nursing unless it involves a substantial amount of scientific knowledge or technical skill.[4]
Appellants then point to the evidence they submitted to the trial court that showed insulin administration does not require a substantial amount of scientific knowledge or technical skill and that unlicensed school personnel may be trained to safely undertake it. Appellants claim their evidence "overwhelmed" the Nursing Associations' contrary evidence.
Appellants assert, in the end, however, the evidentiary conflict is irrelevant because the Legislature, by enacting other statutes, has already determined insulin administration does not require a substantial amount of scientific knowledge or technical skill. Appellants point to the statute allowing students to self-administer insulin with parental permission and physician authorization (Ed. Code, § 49414.5, subd. (c)), the statute identifying several categories of persons who can be trained and permitted to administer insulin to a foster child in placement (Health & Saf. Code, § 1507.25, subd. (b)), and the statute authorizing licensed vocational nurses to administer injections (Bus. & Prof. Code, § 2860.5, subd. (a)). We reject each of these arguments.
*408 (6) To begin with, we are not persuaded the Legislature intended to require a factual inquiry into each specific "administration of medication" to determine whether it involves "a substantial amount of scientific knowledge or technical skill" before it can be determined to be the practice of nursing within the meaning of section 2725. The Legislature could have reached such a result simply by defining the practice of nursing as those functions that involve a substantial amount of scientific knowledge or technical skill and stopping there. The language of section 2725, subdivision (b), however, goes on to include the administration of medicationswithout any limitation or qualificationas a nursing function. The identification of the administration of medications as an included nursing function appears to represent a conclusion of the Legislature that such activity involves a substantial amount of scientific knowledge or technical skill. To read it otherwise risks making the language in section 2725, subdivision (b)(2) unnecessary and we generally avoid an interpretation that renders any portion of a statute superfluous, unnecessary, or a nullity because we presume that the Legislature does not engage in idle acts. (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 634 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) Therefore, we question the 1988 opinion of the Attorney General to the extent it suggests the amount of scientific knowledge or technical skill in each administration of medication must be weighed before it can be determined that it is the practice of nursing.[5]
In any event, we note that for the purposes of this case injections of every kind have long been considered to be included in the practice of nursing in California. (71 Ops.Cal.Atty.Gen., supra, at p. 198.) Therefore, even if an inquiry into the amount of scientific knowledge or technical skill involved could be appropriate under section 2725, we would not reach the evidentiary conflict in this case over whether injections of insulin are currently considered to require a substantial amount of scientific knowledge or technical skill.
(7) Finally, we are not persuaded that the Legislature's authorization of student self-administration of insulin (Ed. Code, § 49414.5, subd. (c)), the administration of insulin to foster children (Health & Saf. Code, § 1507.25, *409 subd. (b)), and the administration of injections by licensed vocational nurses (Bus. & Prof. Code, § 2860.5, subd. (a)), represents a legislative determination that injections of insulin are not the practice of nursing. Instead, these statutes represent the Legislature's decision to except these situations from the prohibition of the practice of nursing generally found in section 2725. "`It is well settled, also, that a general provision is controlled by one that is special, the latter being treated as an exception to the former.'" (People v. Honig (1996) 48 Cal.App.4th 289, 328 [55 Cal.Rptr.2d 555] (Jimenez); accord, People v. Superior Court (2002) 28 Cal.4th 798, 808 [123 Cal.Rptr.2d 31, 50 P.3d 743].)

(2) General Exceptions in the NPA

We consider next whether the administration of insulin to students by unlicensed school personnel as authorized by the CDE's legal advisory falls within any of the exceptions to the prohibition of unlicensed nursing practice contained in the NPA. (Bus. & Prof. Code, § 2727 (section 2727).) Appellants argue three of them may apply.
(8) First, section 2727 provides: "This chapter does not prohibit: [¶] (a) Gratuitous nursing of the sick by friends or members of the family." Appellants argue "gratuitous nursing" is broad enough to cover unlicensed school personnel administering insulin injections to students at the request of the student's parent, foster parent, or guardian. We do not need to reach the question of whether such school personnel would be providing these services "gratuitously." We conclude the broad category of unlicensed school personnel does not fall within the class of friends or family members. "[F]riends or members of the family" as used in section 2727, subdivision (a), refers to persons with a preexisting position of family trust who agree to gratuitously provide the nursing. While there may be individual situations where an unlicensed school employee coincidentally happens to be a member of the student's family or is a family friend outside the school context, the language of section 2727, subdivision (a), cannot reasonably be construed to generally include school personnel as family or friends.
(9) Section 2727 also provides: "This chapter does not prohibit: [¶] . . . [¶] (d) Nursing services in case of an emergency. `Emergency,' as used in this subdivision includes an epidemic or public disaster." Appellants argue this exception includes epidemics or public disasters, but is not limited to them. According to appellants, this emergency exception could reasonably apply to the situation presented by the shortage of school nurses being currently experienced in California. We disagree. "Ejusdem generis (literally, `of the *410 same kind') [citations], means that where general words follow specific words, or specific words follow general words in a statutory enumeration, the general words are construed to embrace only things similar in nature to those enumerated by the specific words. [Citation.]" (California Farm Bureau Federation v. California Wildlife Conservation Bd. (2006) 143 Cal.App.4th 173, 189 [49 Cal.Rptr.3d 169].) (10) Applying the maxim here, the enumeration of epidemics and public disasters limits the emergency exception in section 2727, subdivision (d), to situations similar in nature to such events. Such events are characterized by being extraordinary, often sudden, wide-spread events requiring immediate response. They are not long-term, chronic situations of difficulty such as presented by a shortage of school nurses. They are not the regular administration of medication to a student pursuant to the student's Section 504 Plan or IEP.
Section 2727 provides: "This chapter does not prohibit: [¶] . . . [¶] (e) The performance by any person of such duties as required in the physical care of a patient and/or carrying out medical orders prescribed by a licensed physician; provided, such person shall not in any way assume to practice as a professional, registered, graduate or trained nurse." Appellants claim this exception allows unlicensed school personnel to administer insulin to students as instructed by the student's physician. We disagree.
(11) The language of this exception is qualified by the express proviso that "such person shall not in any way assume to practice as a professional, registered, graduate or trained nurse." (§ 2727, subd. (e), italics added.) The dictionary contains two potentially applicable meanings for the word "assume" used in this proviso. First, "assume" may mean "to take to or upon oneself: UNDERTAKE." (Merriam-Webster's Collegiate Dict. (11th ed. 2006) p. 75, col. 1.) Or "assume" may mean "to pretend to have or be: FEIGN." (Ibid.) If we were to accept the second meaning, appellants' argument might be persuasive. However, the exception as so construed would expand to nearly swallow the rule of section 2725 and would potentially upset the careful balancing of responsibilities otherwise established by the Legislature for other patient caregivers, for example, vocational nurses. (Bus. & Prof. Code, § 2860.5.) It would undermine provisions of the NPA (specifically Bus. & Prof. Code, §§ 2732, 2795 & 2796), which we have already explained prohibit unlicensed persons from practicing nursing, not just holding themselves out as nurses. Moreover, we do not find it likely the Legislature intended unlicensed school personnel to be covered by this exception when we consider the Legislature's various actions relating to the administration of medications to students, as we discuss, post. We believe the word "assume" in section 2727, subdivision (e), should be interpreted to mean to "undertake" the practice of nursing. So construed, the exception of section 2727, subdivision (e), does not permit unlicensed school personnel to *411 administer medications, including insulin, even though the student may have a prescription for those medications from his or her doctor.
(12) In summary, we have found the injections of insulin to be the administration of medication, a nursing function under section 2725. We have found no exception in the NPA for unlicensed school personnel to administer insulin injections to students as proposed by the legal advisory issued by the CDE. We consider next the Education Code provisions regarding the administration of prescribed medications to students, which appellants claim should be interpreted to allow insulin injections to students by unlicensed school personnel.

C. The Education Code Provisions

(13) Section 49423 provides, in relevant part, that "any pupil who is required to take, during the regular schoolday, medication prescribed for him or her by a physician or surgeon, may be assisted by the school nurse or other designated school personnel . . ." (§ 49423, subd. (a)), provided the pupil's physician or surgeon provides a written statement "detailing the name of the medication, method, amount, and time schedules by which the medication is to be taken" and the pupil's parent, foster parent, or guardian provides a written statement "indicating the desire that the school district assist the pupil in the matters set forth in the statement of the physician." (§ 49423, subd. (b)(1).)[6]
The critical phrase in this statute is "may be assisted." (§ 49423, subd. (a).) Appellants contend close examination of the statute shows a student's right to "assistance" with medication includes "administration" of medication. Appellants point out that section 49423 authorizes both licensed school personnel (e.g., the school nurse) and unlicensed school personnel to assist students. Appellants contend the word "assist" is broad enough to include administration because the dictionary definition of "assist" is to "help" or "aid." (Merriam-Webster's Collegiate Dict., supra, p. 74, col. 2.) Since school nurses, who are registered nurses, may undoubtedly "assist" by administering medication, appellants claim the term should be given the same meaning for unlicensed school personnel, who should also be allowed to "assist" by administering medication. Appellants argue "assist[]" is the "including term" and "administer[]" is the "included term."
*412 (14) Several principles of statutory construction are implicated here. Of course, in determining the intent of the Legislature so as to effectuate the purpose of the statute, we always start with the actual language of the statute as it is the best indicator of such intent. (Big Creek Lumber Co. v. County of Santa Cruz (2006) 38 Cal.4th 1139, 1152 [45 Cal.Rptr.3d 21, 136 P.3d 821]; Reynolds v. Bement (2005) 36 Cal.4th 1075, 1086 [32 Cal.Rptr.3d 483, 116 P.3d 1162].) In considering the language, we presume that the Legislature had in mind existing and related laws when it enacted or amended the statute. (Lewis C. Nelson & Sons, Inc. v. Clovis Unified School Dist. (2001) 90 Cal.App.4th 64, 72, fn. 18 [108 Cal.Rptr.2d 715].) We are also mindful that "`[w]hen two statutes touch upon a common subject, they are to be construed in reference to each other, so as to "harmonize the two in such a way that no part of either becomes surplusage." [Citations.] Two codes "`must be read together and so construed as to give effect, when possible, to all the provisions thereof.'"' [Citation.]" (San Leandro Teachers Assn. v. Governing Bd. of San Leandro Unified School Dist. (2009) 46 Cal.4th 822, 836 [95 Cal.Rptr.3d 164, 209 P.3d 73]; see Mejia v. Reed (2003) 31 Cal.4th 657, 663 [3 Cal.Rptr.3d 390, 74 P.3d 166].)
(15) Applying these principles, we conclude the word "assist" in section 49423 means to help in whatever way is legally permitted by the specific individual who is doing the assisting. We explain.
The word "assist" does mean to help or aid. (Merriam-Webster's Collegiate Dict., supra, p. 74, col. 2.) A person may help or aid with medication in any number of ways, including by administering the medication when the patient is unable to take the medication by himself or herself. Help or aid (assistance) with medication, however, may also be provided by a variety of other means. A person may assist with medication, for example, by checking the correct medication is being taken, by removing the cap from a prescription bottle or by pouring out the prescribed dose into a cup or spoon. These are forms of assistance in a person's self-administration of medication. Conceivably, a person might assist with medication even though someone else other than the patient administers the medication. For example, a person can be in charge of properly storing the medication for use. Thus, "assistance" is a broader concept than "administration," although it may include administration as appellants suggest.
(16) The Legislature did not use the term "administration" in section 49423, but used the broader term of assistance. The use of the broader term covers all of the various kinds of assistance that might be useful to a student. However, we assume the Legislature was aware of the NPA in enacting section 49423 and we construe the word "assist" in section 49423 in light of the NPA's restrictions on the practice of nursing. Section 49423 may be harmonized with section 2725 by reading the language of section 49423 that a pupil *413 "may be assisted by the school nurse or other designated school personnel" (§ 49423, subd. (a)) as an authorization of the school nurse to assist in all ways a school nurse is allowed to assist and an authorization of other designated school personnel to assist in all ways they are allowed to assist. Since a school nurse, as a registered nurse, is authorized to administer medications, the assistance by the school nurse includes the administration of medications. But the assistance by other designated school personnel would not include the administration of medications unless they are licensed nurses or fall within some other express statutory authorization or statutory exception to the prohibition of the practice of nursing. The assistance of unlicensed designated school personnel, therefore, would not normally include the administration of medications.
The regulations regarding the administration of medications in public schools pursuant to section 49423, adopted by the CDE as required by Education Code section 49423.6, support our interpretation of the language of section 49423.[7]
The CDE regulations recognize section 49423 authorizes a school nurse and other designated school personnel to assist students with prescribed medications during the school day. (Cal. Code Regs., tit. 5, § 600.) The regulations define "`[o]ther designated school personnel'" as "any individual employed by the local education agency who: [¶] (1) [h]as consented to administer the medication to the pupil or otherwise assist the pupil in the administration of medication; and [¶] (2) [m]ay legally administer the medication to the pupil or otherwise assist the pupil in the administration of the medication." (Cal. Code Regs., tit. 5, § 601, subd. (e), italics added.) As we have discussed, the school nurse or other licensed school district employees are the individuals who "may legally administer" medications. Unlicensed school personnel may legally "otherwise" assist, i.e., assist in other ways.
(17) The regulations go on to provide, "[a] school nurse may administer medication to a pupil or otherwise assist a pupil in the administration of medication as allowed by law and in keeping with applicable standards of professional practice." (Cal. Code Regs., tit. 5, § 604, subd. (a), italics added.) "Other designated school personnel may administer medication to pupils or otherwise assist pupils in the administration of medication as allowed by law and, if they are licensed health care professionals, in keeping with applicable standards of professional practice for their license." (Cal. Code Regs., tit. 5, § 604, subd. (b), italics added.) The pupil's parent/legal guardian or an individual designated by the pupil's parent/legal guardian may administer medication to the pupil or otherwise assist the pupil in the administration *414 of medication "as allowed by law." (Cal. Code Regs., tit. 5, § 604, subds. (c) & (d).) Thus, the regulations appear consistent with our view that section 49423 allows students to receive help with their medications in whatever way is legally permitted for the specific individual who is doing the assisting.
Indeed, the record reflects the CDE itself understood the law to generally preclude unlicensed school personnel from assisting diabetic students by administering insulin injections to them, at least until the federal litigation that resulted in the challenged legal advisory.
In 2005, the CDE issued a "Program Advisory" on the administration of medication to students. In the advisory, the CDE discussed, among other statutes, section 49423 and its implementing regulations. Among its recommendations, the CDE specifically instructed local educational agencies that an "unlicensed staff member does not administer medications that must be administered by injection . . . ." Appellants now claim the Program Advisory only "recommended" that unlicensed school personnel "should" not administer medications that must be administered by injection and that "the CDE did not state or imply that such personnel were not authorized to do so." We do not read the language of the Program Advisory to be quite so permissive. The Program Advisory did not state unlicensed school personnel "should" not administer injections, but that an unlicensed staff member "does not" administer injections. Moreover, any ambiguity was dispelled by the publication issued by the CDE the next year.
In 2006, the CDE published a document answering "Frequently Asked Questions" regarding "Medication Administration Assistance in California." In answer to the question of whether unlicensed school personnel could administer insulin to K-12 students, the CDE responded "No." The CDE provided the following explanation: "California law states, with a few clearly specified legal exceptions, that only a licensed nurse or physician may administer medication in the school setting, these exceptions are situations where [¶] The student self-administers the medication, [¶] A parent or parent designee, such as a relative or close friend, administers the medication, or [¶] There is a public disaster or epidemic . . . ." (Fns. omitted.) The response went on to state that section 49423 "permits the school nurse or other designated school personnel to `assist' students who must `take' medication during the school day that has been prescribed for that student by his or her physician. The terms `assist' and `administer' are plainly not synonymous. An example of an unlicensed school employee `assisting' a student pursuant to . . . section 49423 would be when the school secretary removes the cap from the medication bottle, pours out the prescribed dose into a cup or a spoon, and hands the cup or spoon to the student, who then `takes' or self-administers the required medication. There is no clear statutory authority *415 in California permitting that same unlicensed school employee to `administer' insulin, diastat, or any other parenteral medication, with the . . . statutory exception of epinephrine via auto-injector and glucagon."
Appellants bring to our attention a footnote in the 2006 document, which stated that a student with a Section 504 Plan or IEP who requires medication during the school day "is entitled to receive such medication in accordance with his or her written plan." Appellants now claim this was an implied statement by the CDE that unlicensed school personnel have authority to administer insulin if the student has an IEP or Section 504 Plan and requires insulin. Actually, given the express statements in the CDE's document regarding the lack of authority of unlicensed school personnel to administer insulin, the reference in the footnote regarding students with Section 504 Plans or IEP's can most reasonably be read as an acknowledgement that schools are required to ensure students receive their prescribed insulin as allowed by law, i.e., from licensed personnel.
(18) Appellants also claim the 2006 document was simply wrong. According to appellants, "section 49423's language says what it says. The CDE's understanding of that language cannot change its meaning or set up any kind of estoppel. For the determination of . . . section 49423's meaning is solely and finally a `judicial function.'" Trueinterpretation of a statute is a judicial function (McClung v. Employment Development Department (2004) 34 Cal.4th 467, 470 [20 Cal.Rptr.3d 428, 99 P.3d 1015]), but when an administrative agency is charged with enforcing a particular statute, its interpretation of the statute is entitled to consideration and respect by the courts. (Yamaha Corp. of America v. State Bd. of Equalization, supra, 19 Cal.4th 1, 7; Department of Corrections & Rehabilitation v. Workers' Comp. Appeals Bd. (2008) 166 Cal.App.4th 911, 917 [82 Cal.Rptr.3d 920].) Prior to the issuance of the challenged legal advisory, it is apparent the CDE understood section 49423 and its own implementing regulations to preclude the administration of insulin injections to diabetic students by unlicensed school personnel. This accords with our construction of the statute.
Before we move on, we pause to consider the Legislature's actions over the last decade in this area. Specifically, both parties bring to our attention, but draw different conclusions from, the Legislature's attempts over the last few years to address the administration of medications, including insulin, to students in public schools by unlicensed school personnel.
First in 2001, the Legislature adopted Education Code section 49414. (Stats. 2001, ch. 458, § 2.) Section 49414 allows schools to choose to provide emergency epinephrine auto-injectors to unlicensed but trained personnel and to allow those personnel to utilize those auto-injectors to provide emergency *416 medical aid to persons suffering from anaphylactic reaction. (Ed. Code, § 49414, subds. (a), (c) & (d).)
Then in 2002, Assembly Bill No. 481, which would have added section 49423.1 to the Education Code, was passed by the Legislature. (Assem. Bill No. 481 (2001-2002 Reg. Sess.) enrolled Sept. 17, 2002 (Assembly Bill 481).) The statute would have required all public schools to designate and train at least two employees to administer diabetes care, including the administration of insulin, to diabetic students in accordance with instructions set forth by the student's physician, expressly notwithstanding the provisions of the NPA, when a school nurse or other licensed nurse is absent. (Assem. Bill 481, § 2.) Governor Davis vetoed the bill on the grounds that (1) "[e]xisting law already provides that any pupil who is required to take prescription medication during the regular school day may be assisted by school personnel if a written statement is obtained from a physician and a written request is made by the pupil's parent/guardian," (2) the bill "would create a costly new state reimbursable mandate . . .," and (3) he was advised "the immunity from liability language may protect neither the school district [n]or school personnel from liability." (Governor's veto message to Assem. on Assem. Bill 481 (Sept. 26, 2002).)
The Legislature's adoption of Assembly Bill 481 is some evidence of the Legislature's understanding of the need for statutory authorization for unlicensed school personnel to administer insulin to diabetic students and of the need for an exception from section 2725 to cover such administration of medications (Freedom Newspapers, Inc. v. Orange County Employees Retirement System (1993) 6 Cal.4th 821, 833 [25 Cal.Rptr.2d 148, 863 P.2d 218]). However, the Governor's veto message suggests the need for such statutory authorization and exception was not clear and that the Governor believed the legislation was unnecessary. (See In re Marriage Cases (2008) 43 Cal.4th 757, 796-797, fn. 17 [76 Cal.Rptr.3d 683, 183 P.3d 384].)
The Legislature, nevertheless, persisted in its efforts to address diabetic student health care. The following year, Assembly Bill No. 942 (2003-2004 Reg. Sess.) was introduced, seeking again to add section 49423.1 to the Education Code to permit unlicensed school personnel, in the absence of a licensed nurse, to administer emergency diabetes care to students. (Assem. Bill No. 942 (2003-2004 Reg. Sess.) introduced on Feb. 20, 2003 (Assembly Bill 942).) But Assembly Bill 942 was soon amended to delete the language broadly authorizing unlicensed school personnel to administer diabetes care. (Assem. Bill 942, as amended, Mar. 26, 2003.) The bill was amended and ultimately passed to add Education Code section 49414.5 (section 49414.5) instead of Education Code section 49423.1. (Stats. 2003, ch. 684, § 1.) Section 49414.5 authorizes unlicensed trained school personnel to provide emergency *417 administration of glucagon to diabetic students in the limited circumstance where they are suffering from severe hypoglycemia. (§ 49414.5, subds. (a), (b) & (d).) In addition, subdivision (c) of section 49414.5 authorizes diabetic students who are able and have parent or guardian permission to provide diabetes self-care at school and school-related activities.
In 2004, section 49423 was amended into its current format and provision was made for students to carry and self-administer prescription auto-injectable epinephrine if the school district receives the appropriate written statements from the student's physician and parent/guardian. (Stats. 2004, ch. 846, § 1.)
Also in 2004, Education Code section 49423.1 was enacted with language allowing a student's taking of inhaled asthma medication essentially parallel to the language of section 49423. (Stats. 2004, ch. 832, § 1.)
(19) Considering these actions, we hesitate to draw much from the largely unsuccessful legislative efforts to specifically authorize diabetic students to receive insulin at school other than from licensed nurses. "`Settled principles of statutory construction generally prevent deducing the intent behind one act of [the Legislature] from implications of a second act passed years later. [Citation.]' [Citation.] Moreover, `California courts have frequently noted . . . the very limited guidance that can generally be drawn from the fact that the Legislature has not enacted a particular proposed amendment to an existing statutory scheme. [Citation.] . . . "The unpassed bills of later legislative sessions evoke conflicting inferences. Some legislators might propose them to replace an existing prohibition; others to clarify an existing permission. A third group of legislators might oppose them to preserve an existing prohibition, and a fourth because there was no need to clarify an existing permission. The light shed by such unadopted proposals is too dim to pierce statutory obscurities. As evidence of legislative intent they have little value. [Citations.]"' [Citation.]" (Bell v. Department of Motor Vehicles (1992) 11 Cal.App.4th 304, 313-314 [13 Cal.Rptr.2d 830]; accord, Grupe Development Co. v. Superior Court (1993) 4 Cal.4th 911, 922-923 [16 Cal.Rptr.2d 226, 844 P.2d 545].)
However, when viewed as a whole, the Legislature's affirmative enactments do suggest the Legislature has seen fit to authorize the administration of only a limited number of medications in limited situations to students by unlicensed school personnel. This suggests the Legislature believes express statutory authorization is necessary in light of the NPA.
*418 (20) We conclude section 49423 does not authorize unlicensed school personnel to administer the insulin injections that diabetic students may require pursuant to a Section 504 Plan or IEP. (21) Whatever may be thought of the wisdom, expediency, or policy of a statute, we have no power to rewrite the statute to make it conform to a presumed intention that is unexpressed. (Morillion v. Royal Packing Co. (2000) 22 Cal.4th 575, 585 [94 Cal.Rptr.2d 3, 995 P.2d 139]; County of Santa Clara v. Perry (1998) 18 Cal.4th 435, 446 [75 Cal.Rptr.2d 738, 956 P.2d 1191].)

II.

Federal Law Does Not Preempt California Requirements
Appellants argue we should not interpret the California statutes to prohibit unlicensed school personnel from administering insulin injections that diabetic students may require pursuant to a Section 504 Plan or IEP, as we have, because California law, so interpreted, would be preempted by federal law on the ground the California law "frustrates the full effectiveness of federal law." (Perez v. Campbell (1971) 402 U.S. 637, 652 [29 L.Ed.2d 233, 244, 91 S.Ct. 1704]; see Hines v. Davidowitz (1941) 312 U.S. 52, 67 [85 L.Ed. 581, 587, 61 S.Ct. 399] [federal preemption found where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"].)
(22) "Under the supremacy clause of the United States Constitution (art. VI, cl. 2), Congress has the power to preempt state law concerning matters that lie within the authority of Congress. [Citation.] In determining whether federal law preempts state law, a court's task is to discern congressional intent. [Citation.] Congress's express intent in this regard will be found when Congress explicitly states that it is preempting state authority. [Citation.] Congress's implied intent to preempt is found (i) when it is clear that Congress intended, by comprehensive legislation, to occupy the entire field of regulation, leaving no room for the states to supplement federal law [citation]; (ii) when compliance with both federal and state regulations is an impossibility [citation]; or (iii) when state law `stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' [Citations.]" (Bronco Wine Co. v. Jolly (2004) 33 Cal.4th 943, 955 [17 Cal.Rptr.3d 180, 95 P.3d 422] (Bronco Wine); accord, Olszewski v. Scripps Health (2003) 30 Cal.4th 798, 814 [135 Cal.Rptr.2d 1, 69 P.3d 927].) Appellants claim the last form of federal preemption.
(23) "The party who claims that a state statute is preempted by federal law bears the burden of demonstrating preemption. [Citation.] An important *419 corollary of this rule, often noted and applied by the United States Supreme Court, is that `[w]hen Congress legislates in a field traditionally occupied by the States, "we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."' [Citations.]" (Bronco Wine, supra, 33 Cal.4th at pp. 956-957.) "[T]his venerable presumption `provides assurance that "the federal-state balance," . . . will not be disturbed unintentionally by Congress or unnecessarily by the courts.' [Citations.]" (Id. at p. 957.)
(24) California's legislative choice to protect the health and safety of the state's children who suffer from diabetes by limiting the administration of insulin injections at school to licensed individuals or expressly authorized individuals is an exercise of the State's traditional police power that triggers the presumption against preemption. (Medtronic, Inc. v. Lohr (1996) 518 U.S. 470, 475 [135 L.Ed.2d 700, 709, 116 S.Ct. 2240] [regulation of health and safety is a field traditionally occupied by the States]; accord, Committee of Dental Amalgam Manufacturers & Distributors v. Stratton (9th Cir. 1996) 92 F.3d 807, 811; Chemical Specialties Manufacturers Assn., Inc. v. Allenby (9th Cir. 1992) 958 F.2d 941, 943.)
(25) Moreover, it is important to note that in order to establish conflict preemption, it is not enough to show "the fact that there is `[t]ension between federal and state law.'" (Shroyer v. New Cingular Wireless Services, Inc. (9th Cir. 2007) 498 F.3d 976, 988 (Shroyer).) "The existence of a hypothetical or potential conflict is insufficient to warrant the pre-emption of the state statute." (Rice v. Norman Williams Co. (1982) 458 U.S. 654, 659 [73 L.Ed.2d 1042, 1049, 102 S.Ct. 3294].) Conflict preemption is found "only in `"those situations where conflicts will necessarily arise."'" (Shroyer, supra, 498 F.3d at p. 988.)
Appellants argue the record establishes there are a large number of diabetic students in California, that some of those students must take insulin several times a day in order to survive, that such students may require their insulin shots not only while they are at school, but on school field trips or when they are participating in extracurricular school activities, that California has a significant shortage of registered nurses, in particular school nurses, and that California is currently gripped by fiscal crisis. As a result of these facts, appellants contend substantial numbers of students will not receive their required insulin if unlicensed school personnel are not authorized to administer prescribed insulin injections.
We do not believe the facts submitted by appellant warrant their dramatic conclusion. Appellants have not provided any specific facts showing what *420 number of schools have a diabetic student with a Section 504 Plan or IEP that requires insulin administration during the school day or at school-related activities who are unable to self-administer their medication and who do not have a parent or guardian who elects to administer their insulin or designate another family member or friend to administer the child's insulin. We, therefore, have no idea how many children may actually require the services of a licensed nurse provided by the school district. The fact that there is generally a shortage of registered nurses in California and that there is a particular shortage of school nurses does not establish that a school needing to provide diabetic care to a student pursuant to a Section 504 Plan or IEP plan will be unable to locate and contract for the services of a licensed nurse, including as necessary a licensed vocational nurse, in any particular case. We find it particularly telling that we have not been directed to any data in the record regarding the availability of licensed vocational nurses. Finally, while we can guess that funding of the required services may be difficult for schools in these economic times, we have no evidence that such difficulties cannot be overcome in order to meet the requirements of federal law.
Appellants rely heavily on the case of Crowder v. Kitagawa (9th Cir. 1996) 81 F.3d 1480 (Crowder), as illustrating what they suggest is an analogous situation of conflict preemption. We find Crowder to be materially distinguishable from the situation present in this case. In Crowder, the Ninth Circuit Court of Appeals held the application, without reasonable modifications, of Hawaii's 120-day quarantine requirement for carnivorous animals entering the state to guide dogs needed by visually impaired individuals effectively prevented such persons from enjoying the benefits of state services and activities in violation of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.). (Crowder, supra, at p. 1481.) The court reasoned that: "Although Hawaii's quarantine requirement applies equally to all persons entering the state with a dog, its enforcement burdens visually-impaired persons in a manner different and greater than it burdens others. Because of the unique dependence upon guide dogs among many of the visually-impaired, Hawaii's quarantine effectively denies these personsthe plaintiffs in this casemeaningful access to state services, programs, and activities while such services, programs, and activities remain open and easily accessible by others. The quarantine, therefore, discriminates against the plaintiffs by reason of their disability." (Id. at p. 1484, fn. omitted.) It acknowledged "the general principle that courts will not second-guess the public health and safety decisions of state legislatures acting within their traditional police powers." (Id. at p. 1485.) "However, when Congress has passed antidiscrimination laws such as the ADA which require reasonable modifications to public health and safety policies, it is incumbent upon the courts to insure that the mandate of federal law is achieved." (Ibid.)
*421 In contrast here, appellants have not met their burden to show it is necessary for unlicensed school personnel to administer insulin to diabetic students in order "to insure that the mandate of federal law is achieved." (Crowder, supra, 81 F.3d at p. 1485.) A showing that there may be tension or potential conflict between California law and the federal law is not enough. (Rice v. Norman Williams Co., supra, 458 U.S. at p. 659 [73 L.Ed.2d at p. 1049]; Shroyer, supra, 498 F.3d at p. 988.) California law does not frustrate or stand as an obstacle to the purposes of the federal law in assuring students with disabilities free appropriate public education because schools can comply with both the federal law and the California law.

III.

Conclusion
(26) We do not decide whether unlicensed school personnel can safely administer prescribed insulin to diabetic students who need it or whether it would be sensible to allow them to do so. It is for the Legislature, not the courts, to pass upon the social wisdom of legislation. (Neighbours v. Buzz Oates Enterprises (1990) 217 Cal.App.3d 325, 334 [265 Cal.Rptr. 788].) If diabetic students and their parents would be better served by allowing unlicensed, but trained, school personnel to administer insulin injections when the administration of such injections by a licensed nurse is not feasible, it is up to the Legislature, not the courts, to change the law. (Ibid.)
(27) We conclude only that unlicensed school personnel are not authorized by current law to administer prescribed injections of insulin to a diabetic student, even if the student requires such injections pursuant to a Section 504 or IEP plan, absent express statutory permission. Therefore, section 8 of the CDE's legal advisory that states unlicensed school personnel have such authority is invalid.

DISPOSITION
The judgment and issuance of the peremptory writ of mandate is affirmed. The automatic stay confirmed by this court's order dated April 2, 2009, is vacated upon finality of this opinion. Costs on appeal are awarded to respondents. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)
Sims, J., concurred.
SCOTLAND, P. J., Concurring.
I concur because I must, not because I want to.
*422 This does not mean that I find any fault with the majority's legal analysis and conclusion. Indeed, their decision is thorough, objective, well reasoned, legally correct, and well written. It is just the result, compelled by the Legislature's policy decision and unsuccessful efforts to change the policy, that makes little sense to me.
The American Diabetes Association (ADA) and California's State Department of Education (CDE) made a showing in the trial court that (1) thousands of public school students have diabetes and are in need of insulin injections during the school day, (2) there is a severe shortage of school nurses to assist these students by administering insulin injections, (3) properly trained school personnel who are not nurses can safely inject insulin, and (4) without such assistance, the health of diabetic students will be at risk.
Their position that trained school personnel other than nurses can safely administer insulin injections, and should be authorized to do so when necessary, was also the view of the American Academy of Pediatrics, the American Association of Clinical Endocrinologists, the Pediatric Endocrine Nursing Society, the American Association of Diabetes Educators, and the Juvenile Diabetes Research Foundation.
The American Nursing Association and school nurses organizations disagreed, claiming the health of diabetic public school students will be in jeopardy if trained school personnel other than nurses are permitted to inject insulina drug which the nurses assert is dangerous, requires substantial scientific knowledge to safely administer, and poses a significant risk of harm if administered in error.
Having heard the competing positions and examined information presented in support of each, the trial judge concluded the weight of the evidence supports the position of the ADA and CDE, and they made the most "persuasive public policy argument," for which the judge would have voted if he were a legislator. The judge correctly noted, however, that such a policy decision must be made by the Legislature, not the courts, and that the existing statutory scheme precludes the administration of insulin by trained school personnel other than nurses. In essence, the judge ruled that, even if the scheme is unwise, it cannot be rewritten by courts to achieve a better result.
Like my colleagues, I agree that the trial judge got it right. If there is a flaw in a statutory scheme that does not run afoul of the Constitution, it is up to the Legislature, not the courts, to fix it.
*423 Thus, even though it seems to me that allowing trained school personnel other than nurses to administer insulin injections for diabetic public school students when necessary would be the wiser public policy decision, I must defer to the Legislature's policy judgment and the subsequent legislative and executive decisions preventing a change in that policyregardless of whether they were the product of legitimate concern for the safety of diabetic public school students or the result of a labor organization protecting its turf and flexing its political muscle.
NOTES
[1] California law similarly recognizes the right of students with disabilities to be free of discrimination (Gov. Code, § 11135) and to participate in free appropriate public education (Ed. Code, § 56000 et seq.).
[2] The Nurses Associations complain that this and a number of other arguments by appellants were not raised before the trial court. Appellants have pointed us to several sections of the record in support of their claim that they did "expressly or by implication" raise all the arguments. We have reviewed the sections to which appellants cite and find appellants did raise the claim that the NPA only restricts persons from practicing as registered nurses. We do not find, however, the other arguments about which the Nurses Associations complain. Nevertheless, we exercise our discretion to consider all the points argued by the ADA and the CDE as they involve legal questions regarding the proper interpretation of the statutes and do not require the consideration of any conflicting facts. (Rowe v. Exline (2007) 153 Cal.App.4th 1276, 1287-1288 [63 Cal.Rptr.3d 787].)
[3] In connection with this argument, the ADA has filed with its reply brief a request for judicial notice of a state of Ohio trial court opinion, State ex rel Lancaster School Dist., No. 03 CVH 02 1443 (Ohio Ct. of Common Pleas, Mar. 6, 2006), which considered Ohio's Nursing Practices Act in light of another Ohio statute that authorized the Ohio Board of Education to adopt a policy for administration of drugs by employees. The Nurses Associations oppose the request on several grounds. We find the Ohio decision unhelpful in considering the intent of the California Legislature in adopting section 2725 in 1974 and deny the ADA's request for judicial notice on that basis.
[4] Appellants acknowledge the Attorney General's opinion identifies injections as a practice of nursing. In fact, the opinion goes on to expressly include an "injection by hypodermic syringe into blood vessels, muscle or under the skin" as requiring a substantial amount of scientific knowledge or technical skill. (71 Ops.Cal.Atty.Gen., supra, at p. 198.) But appellants contend this portion of the opinion is no longer valid because the federal regulation it was based upon has been amended to exclude subcutaneous injections such as insulin. Actually, the Attorney General's opinion did not base its conclusion on the federal regulation. It only found its conclusion was "bolstered" by the federal regulation, which admittedly has since been amended to exclude subcutaneous injections from the definition of skilled nursing services for purposes of the Medicare Program. (42 C.F.R. § 409.33 (2009).) The amended federal regulation sheds no light on the California Legislature's intent in enacting the language of section 2725.
[5] Subsequent to the filing of this action, the Board of Registered Nursing (BRN) issued a position statement declaring the "[a]dministration of medications, including insulin, is a nursing function." The BRN's interpretation of section 2725 is normally "entitled to consideration and respect" (Yamaha Corp. of America v. State Bd. of Equalization (1998) 19 Cal.4th 1, 7 [78 Cal.Rptr.2d 1, 960 P.2d 1031]) and supports our plain meaning construction here. However, the authority of the BRN's policy statement is, in our view, undercut somewhat by the fact it was issued by the BRN in express view of this already pending litigation brought by the Nurses Associations. We acknowledge, but do not rely on the policy statement as authority for our decision.
[6] The substance of section 49423 was first added to the Education Code as Education Code section 11753.1 in 1968. (Stats. 1968, ch. 681, § 1, p. 1378.) Section 49423 itself was first enacted in 1976 (Stats. 1976, ch. 1010, § 2, p. 2384) as part of the reorganization of the Education Code. (Stats. 1976, ch. 1010, p. 2384, as amended by Stats. 1976, ch. 1011, p. 4581, operative Apr. 30, 1977.)
[7] Education Code section 49423.6 required the CDE to adopt regulations regarding Education Code section 49423.